## OTTINGER v. MORRIS et al.

No. 28487. Oct. 17, 1939.

Rehearing Denied June 25, 1940.

Application for Leave to File Second
Petition for Rehearing Denied
July 16, 1940.

*104 P. 2d 254.*

Rittenhouse, Webster & Rittenhouse, of Oklahoma City, for plaintiff in error.

Bob Perdue, of Wilburton, and W. P. Morrison, of Oklahoma City, for defendants in error.

RILEY, J. This is an appeal from a judgment against plaintiff in error in an action for damages.

Defendants in error, Grace Morris and Nellie Bowls, with others, hereinafter referred to as plaintiffs, commenced the action against T. C. Ottinger, Marvin G. Steele, and Elia Haynes, to recover damages for the wrongful death of Elmer Bowls, a brother of plaintiff Nellie Bowls.

A demurrer to the evidence of plaintiffs other than Grace Morris and Nellie Bowls was sustained, and they passed out of the case. Judgment was against T. C. Ottinger and Marvin Steele, and in favor of defendant Elia Haynes. T. C. Ottinger appeals making Grace Morris, Nellie Bowls, Marvin Steele, and Elia Haynes defendants in error.

Plaintiffs alleged in their petition in substance that on and prior to May 16, 1934, defendants T. C. Ottinger and Elia Haynes were jointly engaged in the construction of a bridge in Latimer county for the State Highway Commission; that defendant Marvin G. Steele was on said date an agent, servant, and employee of defendants Ottinger and Haynes, and was operating an automobile on the highway for and on behalf of said defendants; that in so doing he carelessly and negligently operated said automobile in such a way that it collided with a truck being driven by deceased Elmer Bowls, causing the death of said Elmer Bowls. There appears to be no claim that there

is not sufficient evidence to support plaintiffs' claim as against defendant Steele.

The principal contention of defendant T. C. Ottinger is that defendant Elia Haynes was an independent contractor as to a portion of the work done in the construction of the bridge, and that defendant Steele was an employee of defendant Haynes.

The record discloses that the Highway Commission advertised for bids for the construction of the bridge. It was described as a truss bridge of three 100-foot truss spans, with 22 feet roadway, and designated as Project No. 601 F. A. The estimated cost was approximately $24,955.

A bid was submitted in the name of T. C. Ottinger. The bid was accepted and a contract in writing was entered into between the State Highway Commission and T. C. Ottinger for the construction of the bridge.

A statutory bond, conditioned for the payment of all indebtedness incurred for all labor and material furnished in the construction of the bridge, was given, executed by T. C. Ottinger as principal.

The usual construction contract bond was also given, executed by T. C. Ottinger as principal. Workmen's compensation insurance was procured by and in the name of T. C. Ottinger. Work order was issued directed to T. C. Ottinger on February 20, 1934, for commencement of the work not later than March 3, 1934.

On March 15, 1934, a contract was entered into in writing between T. C. Ottinger and W. E. Haynes, as follows:

"Hinton, Okla.
"March 15, 1934.

"Contract.

"This contract entered into by and between T. C. Ottinger of Hinton, Okla., and general contractor on State Aid Project No. 601-F. A. Bridge, located in Latimer County, Oklahoma.

"T. C. Ottinger hereafter known as party of the 1st part, and W. E. Haynes of Tuskahoma, Oklahoma, and party of the 2nd part, whereas party of the 2nd part proposes and agrees to unload, haul, erect and paint the three one hundred foot spans, known as the structural steel, whereas party of the 2nd part is to furnish all labor and equipment, except party of the 1st part will furnish the paint free of cost F. O. B. the bridge site. The work to be performed by the party of the 2nd part to be done in a workman-like manner to the satisfaction and *ex-ceptance* of the engineers in charge."

"Party of the 1st part will carry the partys of the 2nd partys compensation and Public Liability insurance, except party of the 2nd party will pay party of the 1st part for it.

"The following price is to be paid the party of the 2nd part by the party of the 1st party on completion and final *except-ance* by the Engineers in charge. Payments to be made party of the 2nd party not later than 5 days after party of the 1st party received warrant on final estimate.

"Fourteen Dollars ($14.00) per ton for structural steel, which includes unloading, hauling, erecting and painting.

"T. C. Ottinger,
"Party of the 1st part

"W. E. Haynes
"Party of the 2nd part."

On or about May 1, 1934, the work had progressed to that point where the steel was ready to be put in place. At or about that time defendant Marvin G. Steele was employed as a riveter. His duties appear to have been the operation of a power-driven riveting machine. Just how or by whom he was employed, the evidence is in conflict. The evidence on this point will be discussed hereafter. In placing the rivets in the steel work it is necessary to heat them, and a certain kind or quality of coal, described as "blacksmith coal," is necessary.

On May 16, 1934, after some work was done on the riveting job, it was found that the coal being used in heating the rivets was not the right quality, and that it would be necessary to procure some blacksmith coal. It also appears that one of the working parts, called a "snap" of the riveting machine, was not the proper size for the rivets being used, and it was

found necessary to procure a "snap" of the proper size. It was necessary to send or telephone to Oklahoma City for the part. The work was shut down until the next morning or until such time as the coal and the "snap" for the riveting machine could be procured. There is some conflict in the evidence as to how long it would probably take to do this. There was some evidence that the work was supposed to be resumed the next morning, and some evidence that work could not be resumed until about noon the next day, for the reason it would take that long to get the "snap" for the riveting machine from Oklahoma City.

To procure the coal it was necessary to go to Hartshorne, 20 miles north and 18 miles west of the bridge, or to Briarstown, some 60 miles north of the bridge.

Defendant Steele lived in Wilburton, 20 miles north of the bridge. He had driven his own automobile to work and had taken a camping outfit with him. Steele was directed to go to Wilburton, and from there telephone to Hartshorne and ascertain whether he could get the coal there, and if not, then to go to Briarstown and get the coal. There was some discussion about sending a truck, but it was decided that a truck could not make the trip and get back in time to start the work the next morning. Steele then said he could haul 400 or 500 pounds of coal in his car. Defendant Haynes gave him his personal check to pay for the coal, his automobile tank was filled with gasoline, and he started after the coal, apparently with the understanding that he would spend the night at his home in Wilburton, and be back on the job with the coal the next morning. He left the bridge about 2 o'clock in the afternoon. While on the way, five miles or more south of Wilburton, the automobile being driven by Steele collided with the truck being driven by Elmer Bowls, resulting in the latter's death.

As stated before, the principal question is whether defendant Haynes was an independent contractor, and whether defendant Steele was his employee. However, at the trial T. C. Ottinger made the defense that, although the contract for the construction of the bridge was taken in his name, the contract in fact was that of his son, E. C. Ottinger, and that E. C. Ottinger in fact carried out the contract with the state, paid all the expenses, etc., and that he, T. C. Ottinger, had no interest whatever in the contract other than that he had lent his name to his son, E. C. Ottinger. The record discloses that not only was the contract taken in the name of T. C. Ottinger, but he executed the necessary bonds, procured workmen's compensation insurance, and that practically all the bills for labor and material, including the laborers employed in the erection of the steel work, were paid by checks drawn on the First National Bank of Hinton, Okla., which show on their face to be checks of T. C. Ottinger. Most of them appear to have been signed "T. C. Ottinger, by E. C. Ottinger." The name of T. C. Ottinger being printed on the checks. The signature of E. C. Ottinger was made by him.

It further appears that defendant Steele was injured in the collision of his automobile with the truck. He claimed compensation under the Workmen's Compensation Law. Employer's first notice of injury was filed, wherein the employer's name was stated as T. C. Ottinger. It was signed "Employer, T. C. Ottinger by Mrs. E. C. Ottinger."

Workmen's compensation insurance was paid for in the name of T. C. Ottinger, but the evidence shows that premiums paid for such insurance as to the workmen employed in erecting the steel was deducted from the amount payable to Haynes.

With this evidence the trial court submitted the questions to the jury, whether T. C. Ottinger or E. C. Ottinger was the real contractor. In this there was no error. The verdict of the jury under the evidence settles this question of fact adversely to the contention of defendant T. C. Ottinger. But the serious question is whether defendant Haynes was an independent contractor, and whether defendant Steele was his employee and not an employee of T. C. Ottinger.

The contract entered into between T. C. Ottinger and W. E. Haynes, on its face, and by its plain terms, makes Haynes an independent contractor. The trial court so instructed the jury, but it further instructed:

"T. C. Ottinger would not be responsible for the acts of the defendant Elia Haynes, or his agents, servants or employees, unless you should further find that said contract was a subterfuge entered into to conceal the real relationship of the parties and that Elia Haynes was in fact the agent and servant of T. C. Ottinger, subject to his directions and control as to the details of his work."

It is contended that there is no evidence tending to prove that the contract referred to was a subterfuge entered into to conceal the real relationship of the parties or that Haynes was in fact the agent and servant of T. C. Ottinger, subject to his direction and control as to the details of his work.

The general rule is that where the contract is in writing, the question of whether the relation of employer and independent contractor is created is a question of law to be determined by the terms of the contract itself. The same is true where the contract is oral and there is no conflict in the evidence as to its terms. However, it is not every contract which by express terms says the relation of employer and independent contractor is created that in law creates such relation. There may be embodied in the contract itself such restrictions, reservations, and specific provisions which give to the principal contractor or employer such control over the work as to completely annul or render nugatory that part of the contract which specifies that such shall be the relation. But here we have a contract which of itself clearly creates the relation of employer or principal contractor and independent contractor. There is nothing whatever in the contract which tends in any way to create a different relation. The only provision therein which may in any case be considered as even tending to conflict with the general rule as to what constitutes a contract and independent employment is that clause which provides that party of the first part (Ottinger) will carry compensation and public liability insurance for second party (Haynes). But the same clause expressly provides that Ottinger is to be reimbursed therefor.

Plaintiffs, however, contend in effect that there is sufficient evidence of deviation from the contract and other circumstances which taken together justified the trial court in submitting the question to the jury whether the contract was a subterfuge.

In Bokoshe Smokeless Coal Co. et al. v. Morehead, 34 Okla. 424, 126 P. 1033, it was in substance said that if, notwithstanding the contract, the principal contractor in that case, the Bokoshe Company, at the time of the employment and injury of the plaintiff, an employee engaged in mining coal, was in actual management and control of the mine, the contract would not protect the coal company, as under such circumstances it would be a mere subterfuge to protect the coal company from liability which it would incur, and would therefore be ineffective. Citing Consolidated Co. v. Seniger, 179 Ill. 370, and Long v. Moon, 107 Mo. 334.

The evidence relied upon by the plaintiff in that case was reviewed and held insufficient. It was in many respects similar to evidence relied upon by plaintiff herein. Here the employee Steele was a witness for plaintiffs and testified in substance that he applied for work to one John Carroll, a foreman for Ottinger, at least in carrying on the concrete work; that Carroll referred him to Haynes for employment. He finally admitted that Haynes put him to work.

Another witness, Newberry, testified substantially the same. Steele also testified that Carroll and Haynes both talked to him about going for the coal, but that he got final orders for directions from Haynes to go for the coal, and that Haynes gave him his personal check to obtain money with which to pay for the coal. There is also some evidence that Carroll was present during the time the work

was being done and undertook to give some directions with reference thereto, but this appears to have been true principally in connection with concrete work being done after the steel work had been completed.

There is no substantial evidence that Ottinger, through his son E. C. Ottinger, or the foreman Carroll, exercised any control over the method of work or the details thereof in connection with the erection of the steel truss work of the bridge.

This evidence, standing alone, is not sufficient to present a question of fact for the jury as to whether Haynes, notwithstanding the contract, was a servant or agent of T. C. Ottinger and not an independent contractor. But there are other facts and circumstances in evidence which plaintiffs earnestly contend were sufficient to present the issue. Among these are (1) that the wages of all the workmen employed by Haynes were paid directly to the workmen by checks of T. C. Ottinger. This circumstance has been held to be an element tending in some degree to show that the contractor was himself a mere servant. Arizona-Hercules Copper Co. v. Crenshaw (Ariz.) 184 P. 996; Fehrenbacher v. Oakesdale Copper Co. (Wash.) 117 P. 870; James v. Pearson (Wash.) 116 P. 852. Other cases bearing on the question are collected in the annotations on the question of independent contractor in 20 A. L. R. 772.

Another fact which developed in the case is that defendant Haynes at the time he entered into the contract was probably insolvent and without means or credit to provide money with which to pay the necessary labor to complete the job. It was apparently because of this that Ottinger agreed to carry the pay roll for Haynes, and also to carry the workmen's compensation insurance. This circumstance is one which is regarded in some cases as tending to negative the independence of the contract. Lehigh Valley Coal Co. v. Yensavage, 218 Fed. 547; Arizona-Hercules Copper Co. v. Crenshaw, supra; Corrigan, Lee & Halpin v. Heubler (Tex. Civ. App.) 167 S. W. 159.

In Fehrenbacher v. Oakesdale Copper Mining Co., supra, this circumstance, with others, is commented upon at length. But in that case there was disagreement as to the provisions of the contract. Therein it is said:

"Where the contract is certain, the question of whether a person operating under it is an independent contractor or a mere servant is a question of law for the court. But, where the terms of the contract are in doubt, the relation of the parties is generally a question for the jury."

Here there is no controversy as to the terms of the contract, but there is a controversy over whether the parties were operating under or apart from the contract.

Nelson v. Am. Cement Plaster Co. (Kan.) 115 P. 578, is a case involving the question of independent contractor wherein there was a question of whether the alleged contract was in writing or oral, and also whether the contract, whether in writing or oral, was in effect. Therein it is said:

"Neither Messenger nor Jenkins (the alleged independent contractors) were possessed of any means or capital. That of itself would not make the contract unlawful, but it is only one of several circumstances indicating the purpose of the arrangement."

With all the foregoing circumstances pointed out, we are unwilling to say that the trial court erred in submitting the question of bona fides of the contract to the jury.

The contention is made that defendant Steele not being subject to the direction of defendant Ottinger in the method and manner of operating the automobile at the time and place of the injury, Ottinger could not be held liable for Steele's negligence.

This contention is without merit if it be conceded that Haynes was not in fact an independent contractor, and that defendant Steele was in fact an employee of Ottinger.

The general rule is stated in 5 Am. Jurisprudence, p. 728, as follows:

"The mere fact that an employee uses his own automobile in the business of the employer does not make the latter liable under the doctrine of respondeat superior for injuries inflicted by such employee in the operation of the automobile. If, however, the other circumstances involved in the case are consistent with, or require, the inference that the activity in which the servant was engaged at the time of the tort complained of, and in which he was using his own car or one which he had hired, was within the scope of his employment, the person injured may recover from the employer, if the servant's use of the automobile or other vehicle was authorized, either expressly or impliedly."

Here there is evidence that defendant Steele was expressly authorized to use his own automobile to procure the coal. If Steele was Ottinger's employee, he was clearly upon a mission for his master.

The verdict of the jury is contrary to the theory that Haynes was performing the work of an independent contractor. If he was not, it may be inferred from the evidence that he was directing the work for his employer.

Defendant contends that the court erred in giving certain instructions. But we think, under the record, the instructions as a whole fairly presented the law. No authority is cited in support of the claim as to any one of the instructions. We find no error.

Finally it is contended that the court erred in denying a new trial on alleged newly discovered evidence. The so-called newly discovered evidence is for the most part merely cumulative, and was such as could easily have been obtained and produced at the trial.

There being no substantial error, the judgment is affirmed.

WELCH, V. C. J., and OSBORN, HURST, DAVISON, and DANNER, JJ., concur. BAYLESS, C. J., and CORN and GIBSON, JJ., dissent.