MODERN MOTORS, Inc., et al. v. ELKINS, Adm'r.

No. 29667. April 8, 1941.

Rehearing Denied June 3, 1941.

Application for Leave to File Second Petition for Rehearing Denied June 17, 1941.

*113 P. 2d 969.*

Butler & Rinehart, of Oklahoma City, and Reily & Reily, of Shawnee, for plaintiffs in error.

Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, for defendant in error.

RILEY, J. This is an action commenced by C. D. Elkins, administrator of the estate of Homer W. Elkins, deceased, against Modern Motors, Inc., a corporation, Ned Parry, and H. I. Miller, to recover damages for the wrongful death of said Homer W. Elkins.

The petition charged that defendant Modern Motors, Inc., was dealing in the sale of automobiles in the city of Shawnee and vicinity; that defendant Ned Parry was, at the time of the injury and death of deceased, the agent of defendant Modern Motors, Inc., and was acting within the scope of his employment; that on the 18th day of March, 1939, while defendant Parry was so employed, he was driving a Ford automobile owned by Modern Motors, Inc., south on North Union street in

Shawnee, Okla.; that he negligently and carelessly drove said automobile in such a way that at the intersection of said North Union street and Dewey avenue it collided with an automobile being driven by defendant H. I. Miller, in an easterly direction along Dewey avenue, so as to cause the car being driven by defendant Parry to swerve across the street and run against and over Homer W. Elkins, causing his injury and death.

There were appropriate allegations of negligence on the part of defendant H. I. Miller so as to allege that the death of Homer W. Elkins was caused by the joint and concurring negligence of defendants Parry and Miller.

Defendant Parry by separate answer denied generally the allegations of the petition, and specifically denied that, at the time alleged, he was in the discharge of his duty as an employee for Modern Motors, Inc., or that he was at the time acting in the scope of his employment as of said company or that said company owned the automobile he was operating at the time.

Defendant Modern Motors, Inc., answered to the same general effect.

Defendant Miller made no defense. No judgment was taken against him.

The cause was tried to a jury, resulting in a verdict and judgment for plaintiff and against Ned Parry and Modern Motors, Inc., and they appeal.

There is ample evidence to sustain the judgment as to defendant Ned Parry. There is no effort to show reversible error as to him.

Defendant Modern Motors, Inc., contends that under the evidence Parry was shown to be an independent contractor, and not its servant.

Parry was, and had been, for more than six months, in the employ of Modern Motors, Inc., as a salesman, mostly of new automobiles; he also sold used cars. He was compensated solely by payment of commissions. In making his sales he went where and when he pleased, seeking his own customers. However, he could make no final sale without the approval of Modern Motors, Inc., where credit was to be extended to the proposed purchaser or where a used car was to be traded in as a part of the purchase price. Where a used car was taken in as part payment on a new car, the used car would be appraised by Modern Motors, Inc. In all cases the instruments necessary to close the deal were drawn in the office of Modern Motors, Inc.

As to who owned the automobile that Parry was operating at the time of the accident, the evidence is in conflict.

R. J. Wissinger, president and manager of Modern Motors, Inc., testified on behalf of defendants that Parry was working for Modern Motors, Inc., in the capacity of a salesman and was hired solely upon a commission basis; that his duties consisted of finding his own prospective buyers, pursuing his own course; that Modern Motors, Inc., did not direct where he should go, or the time of day he should work; in short, that it had no control whatever over Parry as to the details of his work; that no one directed him, and at the time of the accident Parry was not under the direction of the company, and Modern Motors, Inc., did not know that he was driving on the highway at the time, and that the automobile which Parry was driving was owned by Parry. He also testified that there was no written employment agreement. Later, however, he admitted that there was on file with the company memorandum agreements between Modern Motors, Inc., and salesmen employed for the 1939 model year, one of which was signed by Parry.

Parry was a witness on his own behalf and for the company with respect to the relation between himself and Modern Motors, Inc. His testimony was substantially the same as that of Wissinger.

The memorandum of working agreement was introduced in evidence. Among other things, it provides:

136

"The management reserves the privilege of altering or rescinding this agreement at any time.

"All deals and appraisals must be made at our office and properly accepted by the person in charge of such procedure.

"Three $5.00 gasoline books, or equivalent credit, will be furnished by the company to each new car salesman each month. Salesmen selling more than six (6) new units per month will receive an additional $5.00 gasoline credit for each car sold in excess of this amount. Fleet deals are excepted from the provision.

"Regular daily reports of salesman's activities and demonstrator's mileage are to be furnished the company.

"Saving of $1.00 per new car and 50c per used car will be held and credited to salesman's Special Account; this amount to be paid salesman on December 20 of each year. In the event of salesman leaving our employ his sales-savings account, of course, will be paid to him at that time."

There was evidence to the effect that, aside from the written agreement, all salesmen were required to report at a meeting in the office of the company at 8 o'clock each morning; at that time they held a short sales meeting and also at that time they turned in reports of work done the day before and outlined the work they were to do that day; that salesmen were under the direction of the company to a certain extent; the sales manager always outlined some of the work for salesmen to do during the day.

The general rule is that where an automobile salesman is employed on a commission basis, where the employer exercises no control over him in the details of his salesmanship, allowing him to find his own customers and make sales without any control over his action, the salesman is not a servant of the person for whom he sells, but is regarded as an employee in the nature of an independent contractor, and the employer is not liable for the negligence of the salesman in the operation of an automobile in the course of his efforts to make sales. Barton v. Studebaker Corp., 46 Cal. App. 707, 189 P. 1025; McCraner v. Nunn, 129 Kan. 802, 284 P. 603. To the same effect is Nettleship v. Shipman et al., 161 Wash. 292, 296 P. 1056, and Mitchell v. Maytag-Pacific-Intermountain Co. et al., 184 Wash. 342, 51 P. 2d 393. In the latter two cases the salesmen sold washing machines but used automobiles in course of their work; see, also, Ashley v. Safeway Stores, Inc., et al., 100 Mont. 312, 47 P. 2d 53.

On the other hand, if the relation is that of principal and agent, or master and servant, the principal or master, as the case may be, is liable for the negligence of the agent or servant, if at the time the agent or servant is using the car in the principal's or master's service. Borah v. Zoellner Motor Co. (Mo. App.) 257 S. W. 145; Ryan v. Farrell et al., 208 Cal. 200, 280 P. 945; May v. Farrell et al., 94 Cal. App. 703, 271 P. 789; Weinberg v. Clark et al., 120 Cal. App. 362, 8 P. 2d 164.

It is not always easy to determine whether the salesman is the agent of the employer or an independent contractor.

The general rule is that in determining whether a party is acting for himself or as agent of his employer, it is the right to control in the details of the work that distinguishes between independent contractor and agent. Borah v. Zoellner, supra. In case of a salesman employed on a commission basis, unless it appears that such salesman exercised control over the details of his work to the exclusion of the employer, the latter will generally be held responsible on the theory of respondeat superior, assuming that the injury complained of was inflicted by the salesman while using the automobile in furtherance of his employment. 5 Am. Jur. 727, par. 392.

Where the evidence is in conflict, the question is one of fact for the jury. In this case the trial court by appropriate instruction submitted the question to the jury and also the question of ownership

of the automobile Parry was driving at the time. The court instructed the jury that unless they found that plaintiff had established by a fair preponderance of the evidence, both of said facts as claimed by plaintiff, the verdict should be for defendant Modern Motors, Inc.

The verdict of the jury is conclusive on these questions, if there is any competent evidence reasonably tending to support it. In the cases cited by and relied upon by defendant Modern Motors, Inc., Barton v. Studebaker Corp., supra, and other similar cases, it was made to appear that the salesman did retain the right to control, and did exercise control over the details of the work, to the exclusion of the employer, and in each of said cases the salesman was held to be an independent contractor. The right of control is a decisive factor.

In Borah v. Zoellner Motor Co., supra, it is pointed out that where the employer did not in any way control Bridges, the salesman, in the details or manner in which he made sales, it clearly had the right to do so. The elements there pointed out as showing the right to control were that in making a sale the salesman could not fix the price or dictate the terms, or extend credit; that the agency could be terminated at any time by either party.

In Ryan v. Farrell, supra, other facts and circumstances were pointed out as tending to show that the salesman was not an independent contractor; among which were that the employment was for no definite length of time, and that the employer had the right to discharge the salesman at any time; all salesmen were required to report at employer's office every morning at 8:15 o'clock for a sales meeting to receive instructions in regard to the promotion of sales from the sales manager. The salesman there testified that he regarded himself as under the control and management of the employer. In this case the salesman testified to the contrary. There the employer fixed the prices and if a used or second-hand car was to be taken in, it must have been appraised as directed by the sales manager.

There is evidence in the record in this case tending to show nearly all of these elements present in the relation between Parry and Modern Motors, Inc., sufficient in themselves to distinguish between this case and Barton v. Studebaker Corp., supra, and other similar cases. We cannot say as a matter of law that Parry was an independent contractor. Therefore, there was no error in submitting that question to the jury, and there is ample evidence to support the verdict of the jury in that respect.

In addition, there is one provision in the contract not usually found in contracts between employer and independent contractor; that is, the provision allowing the company to retain $1 out of the commission of each new car and 50c of each used car and hold same in a special account to be paid to the salesman on the 20th day of December each year or sooner in case the salesman left the service of the company. This may be considered an indication of the relation of master and servant.

There is controversy in this case over the question of who owned the automobile being driven by Parry, but as we view the law, that is not material. 5 Am. Jur. 728, par. 383; Auer vs. Sinclair Ref. Co., 103 N.J.L. 372, 54 A.L.R. 623; Dishman v. Whitney, 121 Wash. 157, 209 P. 12; Phillips et al. v. Larrabee et al., 32 Cal. App. 2d 720, 90 P. 2d 820; Ryan v. Farrell et al., 208 Cal. 200, 280 P. 945; May v. Farrell et al., 94 Cal. App. 703, 271 P. 789.

It may be noted, however, that in this case plaintiff alleged that Modern Motors, Inc., was the owner of the automobile, and the trial court instructed the jury that unless the plaintiff had established that Modern Motors, Inc., was the owner of the automobile the verdict should be for defendant Modern Motors, Inc.

In view of the rule we deem it unnecessary to discuss the evidence going to the question of ownership of the automobile, except to say that notwithstanding the positive evidence of defendant Parry and the manager Wissinger and

the conditional sale contract introduced in evidence, there were other facts and circumstances in evidence tending to prove ownership of the automobile in Modern Motors, Inc. It is contended that the plaintiff failed to sustain the burden imposed upon him of proving the existence of agency of Parry. What we have heretofore said and the facts and circumstances noted were fully sufficient to carry that question to the jury.

It is next contended that there is no sufficient evidence to show that at the time of the injury defendant Parry was acting within the scope of his employment.

Plaintiff relied in part upon the rule that where the relation of employer and employee is shown and the employee is shown to have been using a vehicle owned by the employer, the presumption is that the employee was acting in furtherance of his master's business.

There is evidence to the effect that Parry had no certain time within which to sell cars; he could sell or demonstrate at all hours, except that he was required to be at the sales meeting at 8 o'clock each morning. His duties permitted him to travel from place to place, and interview prospective customers wherever he could find them, except that he was not allowed to go into city or town where there was another Ford agency.

On the morning of the accident, Parry left his home shortly before 8 o'clock to go either to the sales meeting at the office of the company or to interview prospective customers. If either, he was acting in furtherance of his employment. It is not required that he be on any specific mission for his master, it is sufficient if he is acting in furtherance of his employment. There was sufficient evidence to go to the jury on the question.

It is suggested by counsel that at the particular time of the accident, Parry, if acting in furtherance of his employment at the outset, had deviated therefrom in that it is shown that on the way he stopped, and took into the automobile two high school band boys from another town; that Parry thereby deviated from his mission at the time of the collision.

This suggestion is without merit. Although he did take the two boys into the car and intended to take them down town, he is not shown to have deviated in the least from the route he intended to take to the office or to interview his prospective customers when the collision occurred. Kruse et ux. v. White Bros. et al., 81 Cal. App. 86, 253 P. 178; Phillips Petroleum Co. v. Ward, 181 Okla. 462, 74 P. 2d 614.

It is next contended that the court erred in admitting certain alleged incompetent evidence concerning statements made by defendant Parry some days after the collision occurred.

Parry was a witness on behalf of himself and Modern Motors, Inc. On direct examination he testified that he owned the car he was driving at the time of the collision and that he was not at that time on a mission of defendant Modern Motors, Inc.

On cross-examination he was asked whether, in a conversation with Dale Elkins, he had stated that, "I didn't own the automobile. It belonged to Modern Motors." And whether in the same conversation he had said:

"I had made out a list of the prospects I had called on the day before, and also a list of the prospects I was going to call on that day. Sometimes I made out this list at the Motor Company, but on this morning I made the list out at home, and had started to work these prospects when the accident happened."

Counsel for Modern Motors, Inc., objected to the evidence as an attempt to impeach the witness on a matter not admissible in chief. The court overruled the objection, and at the same time advised the jury that the questions were admissible for the purpose of impeachment and for no other purpose. The answer to both questions was "No."

In rebuttal, Dale Elkins was asked whether Parry made such statements. Again Modern Motors, Inc., objected, whereupon the court ruled:

"It is admissible for the purpose of impeachment, and the jury has heretofore been instructed it is for impeachment only."

The court again advised the jury that the testimony was admitted only for the purpose of impeachment; whereupon the witness answered that Parry did make such statements to him.

It must be borne in mind that when the defendant Parry was testifying in chief concerning these very matters he was testifying on behalf of Modern Motors, Inc., as well as in his own behalf. On the particular matters his testimony in chief was solely for the benefit of Modern Motors, Inc. The evidence complained of was not inadmissible under the authorities cited by counsel for defendants. These authorities hold the evidence of the contradictory statements of a witness are admissible only for impeaching purposes and extend no further than the question of credibility. Such evidence does not tend to establish the truth of the matters embraced in the contradictory statements and that the jury should be so advised. De Camp et al. v. Comerford, 134 Okla. 145, 272 P. 475; Wildrick v. Raney, 170 Ark. 1194, 282 S. W. 17.

The court complied strictly with these rules and specifically and correctly instructed the jury in regard to the matter.

Defendants assert that the court erred in refusing its offered instruction No. 3, going to the effect of the impeaching evidence. There was no error for the reason that the instruction as offered went far beyond the rule.

Other propositions are submitted, but the matters therein are covered by what we have said.

Judgment affirmed.

WELCH, C. J., CORN, V. C. J., and BAYLESS and GIBSON, JJ., concur.