ATLAS LIFE INS. CO. OF TULSA v. FORAKER et al.

No. 31407. Jan. 22, 1946.

*165 P. 2d 323.*

Walter Billingsley, of Wewoka, and Harry Rogers, Logan Stephenson, and F. C. Swindell, all of Tulsa, for plaintiff in error.

E. J. Sutherland and Bishop & Bishop, all of Seminole, for defendants in error.

OSBORN, J. This case was instituted in the district court of Seminole county by the plaintiffs, Flossie Foraker, and Irene Foraker, Douglas Foraker, Bobbie Foraker, and Olive Ray Foraker, minors, by their mother and next friend, Flossie Foraker, against the defendants, Atlas Life Insurance Company and Tom Wilson Hewitt, to recover damages for the death of Harry A. Foraker, the husband of Flossie Foraker and father of the minor plaintiffs. At the close of the evidence the Insurance Company moved for a directed verdict, which was denied, the case was dismissed as to the defendant Hewitt, and the court submitted to a jury the issues between the plaintiffs and Insurance Company, the jury returning a verdict in favor of plaintiffs. The Company appeals.

From the evidence it appears that the Insurance Company is an Oklahoma corporation engaged in the business of selling life insurance, with its principal

place of business in Tulsa, Okla., and that on January 11, 1938, it entered into an agency contract with the defendant Hewitt, employing him as such agent to solicit applications for life insurance within a certain territory stated in the contract to be "Ponca City and vicinity." The contract provided that as specifically limited by its terms and by the proper rules of the Company, which rules were a part of said agreement, Hewitt was to solicit applications for life insurance on forms provided by the Company and at company rates, to collect the first year's premiums on applications secured by him and on policies sent to him for delivery, to deliver policies issued to his applicants by the Company, and to perform such other duties only as the Company should, from time to time, specifically direct. It contained other provisions dealing with the details of the taking of applications, making of collections, incurring of expenses, the type of insurance which could be sold, and the rate of commissions to be paid by the Company, commissions being the only form of remuneration to be paid by the Company to Hewitt for his services. In it Hewitt agreed that he would diligently canvass for applications for insurance for the Company and perform all other duties imposed upon him by the contract within the territory granted under the contract. The rules referred to in the contract were contained in a rate book furnished Hewitt and dealt only with details as to the kind of insurance to be sold, the filling out of applications, ordering of supplies, medical examinations, and similar matters. Nowhere in the contract or in the rate book of rules did the Company reserve any right to control or direct Hewitt in the methods to be followed by him in soliciting insurance, collecting premiums or delivering policies, and there was no agreement upon his part to devote all his time to such business. The contract further provided that either party could terminate it by notice in writing at least 30 days before the date fixed for termination, and it could be terminated by the Company upon immediate notice if the agent failed to comply with the duties, conditions, or obligations of the contract.

At about the same time the written contract above outlined was executed, an oral contract was entered into between the Company, acting through its general supervisor, Jewel S. Jones, and Hewitt, whereby Hewitt was authorized to find subagents or other agents acceptable to the Company to be employed by the Company in writing its insurance. For these services the Company paid Hewitt the sum of $100 per month from the inception of such contract to August 16, 1938, at which time the allowance was terminated by the Company.

From the evidence it appears that Hewitt was a resident of Enid, Okla., at the time the contract above mentioned was made and that his mother lived near Kiowa, Okla.; that at his request the Company had permitted him to go to Ada, Okla., in the early part of 1938 to investigate Ada and the surrounding territory with a view of taking that territory instead of the Ponca City area, and that he remained in Ada for some two months, after which he decided to keep the Ponca City territory and returned to Enid. While he was in Ada and vicinity he had contacted a man named Hewes, a resident of St. Louis, Pottawatomie county, and procured his appointment as a subagent, and on or about the 16th or 17th of September, 1938, he went from Enid to Kiowa, thence to Ada, and from there to St. Louis, Okla., to assist Hewes in procuring insurance from certain prospects Hewes had located. Hewitt testified at first that he went to see Hewes of his own volition, but later testified that he was told to see Hewes by Jones, the supervisor for the Insurance Company. Jones denied that he ever told Hewitt to see Hewes. After seeing Hewes at St. Louis and calling on Hewes' prospects, Hewitt left St. Louis, intending to go through Seminole and visit a prospect there, then go to Kiowa and get his wife and children,

who were visiting his mother, and return to Enid. While driving from St. Louis to Seminole his car struck Harry A. Foraker, inflicting injuries from which Foraker died shortly thereafter. There is no evidence that the Company knew of Hewitt's trip to Ada and vicinity or that he received any instructions from it to go to that point, except his testimony that Jones told him to see Hewes. Hewitt testified that that instruction was given him some three or four weeks before he made the trip and that at the time he made the trip the oral contract whereby he was employed to procure and oversee subagents had terminated; that he made the trip to visit his mother at Kiowa, Okla., and bring back his wife and children who were visiting at his mother's home; that he stayed in Kiowa three or four days, then went to Ada to try to get some business, then went to St. Louis for the same purpose, and that at St. Louis he and Hewes attempted to get some applications for policies but were not successful. This evidence was not contradicted in any way. He further testified that shortly before making this trip he had spent two or three weeks in Texas adjusting some hail insurance claims for a company other than the Atlas Life Insurance Company, and that he had an agent in Dallas, Tex., in connection with said business. It therefore clearly appears that so far as the Insurance Company was concerned the trip was not specifically authorized by it or made pursuant to any specific instruction or direction on its part and that it had no knowledge or information about it. The evidence does show that the officials of the Company knew that Hewitt used his own car in the Company's business, and that all expenses connected with its use were paid by Hewitt, the $100 payments being solely in connection with his work in finding and employing subagents and overseeing their activities.

At the conclusion of all the evidence the Company moved for a directed verdict, which motion was overruled by the court and is assigned as error here.

This motion squarely raised what we consider the decisive question in this case, that is, Was Hewitt an independent contractor so that the Company would be absolved from liability for an act of negligence of Hewitt in driving his car? Counsel for the Company contend that the evidence established that Hewitt was not the servant of the Company, but was an independent contractor. Counsel for plaintiffs vigorously assert that the evidence does not sufficiently show that Hewitt was an independent contractor and that the trial court properly submitted that issue to the jury.

In Ellis & Lewis, Inc., v. Trimble, 177 Okla. 5, 57 P. 2d 244, this court stated that as a general rule the line of demarcation between an independent contractor and a servant is one not clearly drawn by the courts and that the question must be determined upon the facts peculiar to each case. In that case we pointed out the following elements to be considered in determining whether a party is an agent or an independent contractor:

"' . . . (1) The degree of control exercised by the employer, or the independence enjoyed by the contractor or agent: (2) whether the party is to be paid by the job or is to receive a certain salary by the day, week, or month; (3) whether his employment consists solely in working for his employer; (4) the control that is exercised over him in the method and manner of performing the work; (5) whether the agent uses his own equipment, or whether the equipment, if any, so used, is owned and controlled by the owner; and (6) the nature of the contract, whether written or oral.'"

In that case we held that the owner of a truck hauling materials between two points and paid by the load was an independent contractor although the employer told him when to commence work, where to get the materials, where to deposit them, and could discharge him at any time.

In W. H. Butcher Packing Co. v. Hixon, 189 Okla. 700, 119 P. 2d 1019, we held that Hixon, a truck owner mak-

ing deliveries of goods to the customers of W. H. Butcher Packing Company for a consideration of 25 per cent of the sale price of such products, operating his truck over a certain route daily, was not a servant but was an independent contractor. We stated that the manner and method employed by the respondent Hixon in performing his work were matters of his own choice and that all the packing company required was that its products be sold and delivered on his route; that although the company had the right to discharge him if he conducted himself in a manner unbecoming a salesman of its merchandise, there was no evidence that any of its officers or employees had or did exercise the power to direct him in the manner in which the general objects of his services were to be obtained.

In Oklahoma Publishing Co. v. Greenlee, 150 Okla. 69, 300 P. 684, cited with approval in W. H. Butcher Packing Co. v. Hixon, supra, the contract between the parties provided that Greenlee should daily carry and deliver newspapers in Seminole, Okla., according to his own methods, in his own conveyance, or in such manner as he alone should determine, being responsible only for the safe carriage and delivery each day of the papers to subscribers in Seminole. There was no route mapped out or designated for him to take or to indicate how or where he should go, but that was left entirely to him. He was paid $25 per week and, in addition, was allowed a commission on each paper each week to each customer. We held that Greenlee was an independent contractor, saying:

"Our court has many times defined an independent contractor. The general rule is that an independent contractor is one who contracts to do a piece of work according to his own methods and without being subject to the control of the party with whom he contracts except as to the result of the work."

While this court has not previously passed upon the status of an insurance agent as to his being a servant or independent contractor, that question has been passed upon by courts of other states, and where the evidence, as here, showed that the insurance agent was free to use his own methods and his own time, without the exercise or right of exercise of any control by the insurance company, in the details of soliciting applications for insurance, the agent was held to be an independent contractor. See Vert v. Metropolitan Life Insurance Co., 342 Mo. 629, 117 S. W. 2d 252, 116 A. L. R. 1381, and note; American National Insurance Co. v. Denke et al., 128 Tex., 229, 95 S. W. 2d 370, 107 A. L. R. 409, and note; American Nat. Ins. Co. v. Kennedy, 130 Tex., 155, 107 S. W. 2d 364, 112 A. L. R. 916; and Stockwell v. Morris, 46 Wyo. 1, 22 P. 2d 189, which case, although not involving an insurance agent, exhaustively reviews the authorities and outlines the growth of the independent contractor doctrine.

The controlling or principal test is generally stated to be as to whether or not the employer, using that term in a broad sense, has the right to control the physical details of the work to be done by the agent, or whether the latter represents the former only as to the result to be accomplished. 39 C. J. 1316; 14 R. C. L. 67.

In section 250 of Restatement of Law of Agency, it is said:

"Except as stated in section 251, a principal is not liable for physical harm caused by the negligent physical conduct of an agent, who is not a servant, during the performance of the principal's business, unless the act was done in the manner directed or authorized by the principal or the result was one intended or authorized by the principal.

"Comment: (a) A principal employing another to achieve a result but not controlling nor having the right to control the details of his *physical movements* is not responsible for incidental negligence while such person is conducting the authorized transaction. Thus, the principal is not liable for the negligent physical conduct of an attorney, a broker, a factor, or a rental agent,

as such. In their movements and their control of physical forces, they are in the relation of independent contractors to the principal. It is only when to the relationship of principal and agent there is added that right to control *physical details as to the manner of performance* which is characteristic of the relationship of master and servant, that the person in whose service the act is done becomes subject to liability for the physical conduct of the actor." (Italics ours.)

In this case, not only did the agent own the car, but the Company retained no right or authority to direct him to use the same, or if used, the manner of its use. He was privileged to resort to any other method of transportation, whether by train, by bus, or by air. The Company was concerned only with the ultimate result of his efforts.

Plaintiffs, in support of their contention that the court properly submitted to the jury the question of whether Hewitt was a servant or an independent contractor, rely upon Magnolia Petroleum Co. v. Pierce, 132 Okla. 167, 269 P. 1076, and Modern Motors v. Elkins, 189 Okla. 134, 113 P. 2d 969. In the case first cited, the contract between the company and Pierce provided that the duties of the agent "include the proper care of stocks of all kind placed in his charge, storage tanks, warehouse and other equipment, soliciting and carrying on business under the direction of the division manager, and other authorized representatives." The court properly held that the agent was employed to sell the petroleum company's products under its direction and control and that he was a servant and not an independent contractor.

In Modern Motors v. Elkins, supra, the evidence showed that all salesmen were required to report at a meeting in the office of the company at 8:00 o'clock each morning, at which time they held a short sales meeting, turned in reports of work done the day before, and outlined the work they were to do that day; that they were under the directions of the company to a certain

extent, and that the sales manager always outlined some of the work for salesmen to do during the day. There was also a question about the ownership of the automobile driven by the agent at the time of the accident, there being some evidence tending to prove its ownership by Modern Motors. The court held that on this evidence the trial court properly submitted to the jury the question of whether the agent was a servant or an independent contractor.

Plaintiffs also cite numerous cases from other jurisdictions, but from an examination of these cases it appears that in a great many the contracts provided that the agent should be under the control and direction of the principal, and in others that the agent was on an errand at the specific direction of the principal and subject to its control. We do not consider these cases applicable to the fact situation in the case at bar.

The uncontradicted evidence having conclusively established that Hewitt was an independent contractor, the Insurance Company was not liable to the plaintiffs for negligence on his part. The motion of the Company for a directed verdict at the close of all the evidence should have been sustained.

Reversed.

GIBSON, C. J., HURST, V. C. J., and BAYLESS, WELCH, CORN, and DAVISON, JJ., concur. RILEY and ARNOLD, JJ., dissent.

———

ARNOLD, J. (dissenting). As disclosed by the record in this case and the majority opinion there was definite evidence that one Hewitt was not only a soliciting insurance agent of the defendant company but was also, by special contract with the company, a supervisor and obliged by such agreement to contact, supervise, and "straighten out" local agents of the company when directed by the company so to do; that prior to the death of Foraker by reason of

Hewitt's alleged negligence he had received instructions from the general supervisor of the defendant to go to St. Louis, Okla., and contact one Hewes, a local agent of the company, who was not procuring a justifiable volume of business and attempt to "straighten" him out. Just before he made the trip in pursuance of said direction by the defendant his compensation for supervising activities was, for economy reasons, discontinued but with the understanding that he would thereafter continue to perform such service; that he did continue to perform such service; that the entire arrangement with the defendant company had existed and he had performed his duties thereunder in a large designated territory, mostly rural in character, for many months; that the use of an automobile was a practical necessity in the performance of the duties imposed by his contracts with the company; that the company well knew this and knew that he was using his automobile in the performance of his duties as a solicitor of insurance and supervisor of local agents. He was returning by automobile from a supervising mission and going directly to see a prospect whom he had theretofore contacted with reference to the purchase of an insurance policy.

The question of whether or not Hewitt, a general and special agent of the defendant company, was an independent contractor was, in my judgment, properly submitted to the jury. Its determination of the question was adverse to the company, and since there was competent evidence reasonably tending to support the finding in this respect, the case should not be reversed for this reason.

It is conclusively shown that until compensation for the services of Hewitt as a special supervisor was discontinued it was his duty to go where and when the company directed him to go in the performance of this duty. After that there is a conflict in the testimony of Hewitt and the company as to whether he was to perform such service.

The right to control the time, place, manner, and means of the performance of an employee's duties is an essential test of the existence of the relationship of master and servant. If an employer retains such right, though never exercised, the relationship is not that of independent contractor but is that of master and servant. Magnolia Petroleum Co. v. Pierce, 132 Okla. 167, 269 P. 1076; Ottinger v. Morris et al., 187 Okla. 517, 104 P. 2d 254.

The facts in the instant case are so dissimilar from those in the cases cited by the majority from this court, I think it unncessary to point out specifically the material dissimilarity.

The majority opinion concedes, as I do, that we have not heretofore passed upon the exact question presented, but it says that other courts have. To this I agree. The cases cited by the majority opinion, towit: Vert v. Metropolitan Life Insurance Co., 342 Mo. 629, 117 S. W. 2d 252, 116 A.L.R. 1381, and note; American National Insurance Co. v. Denke et al., 128 Tex. 229, 95 S. W. 2d 370, 107 A.L.R. 409, and note; American Nat. Ins. Co. v. Kennedy, 130 Tex. 155, 107 S. W. 2d 364, 112 A.L.R. 916; and Stockwell v. Morris, 46 Wyo. 1, 22 P. 2d 189, involved, in my judgment, very dissimilar fact situations that accounts for the determination in those cases that the insurance agent was an independent contractor. Generally they involved situations wherein the agent was assigned and operated in a small, well defined, area of a city where various means of transportation were available and practicable and the use of an automobile in the performance of his duties of soliciting insurance would not be necessary and no contract existed to supervise other agents at the specific direction of the insurance company.

An insurance company that assigns to an agent the extra duty of supervising and directing local agents in a large territory, largely rural, where the use of an automobile would be a practical necessity, with knowledge of such use, should be held to have impliedly au-

thorized the use of such means of conveyance in the furtherance of its business and duties imposed. The relationship in such a case is that of master and servant. Chatelain v. Thackeray, 98 Utah, 525, 100 P. 2d 191; Wooten v. Dragon Consol. Min. Co., 54 Utah, 459, 181 P. 593; 39 C. J. 316. I know of no case, nor have we been cited any, holding to the contrary. To hold otherwise would be to say that if an insurance company controls every other detail of the performance of an agent's duties in the furtherance of its business, but does not specifically authorize or direct the means of conveyance, the relationship would be that of independent contractor.