COMMONWEALTH LIFE INSURANCE
COMPANY, a Corporation,
Plaintiff in Error,

v.

Pleas H. GAY, Defendant in Error.

No. 38712.

Supreme Court of Oklahoma.

July 5, 1961.

Rehearing Denied Oct. 3, 1961.

Robert Hudson, Tulsa, Duke Duvall, Duvall, Head & Wilson, Oklahoma City, for plaintiff in error.

Sam M. Williams, of Allen & Williams, Chickasha, John A. Johnson (of Savage, Gibson, Benefield & Shelton), Oklahoma City, for defendant in error.

JACKSON, Justice.

Parties are referred to as in the trial court. Plaintiff, Gay, sued defendants, Loafman and Commonwealth Life Insurance Company, for damages for injuries received in an automobile accident resulting from the negligence of Loafman as driver of the car which hit Gay, who was a highway department employee at work on the highway near Rush Springs at the time of the accident. Plaintiff alleged, as grounds for recovery against Commonwealth, that defendant Loafman at the time of the accident was the "agent, servant or employee" of Commonwealth, "acting within the scope of his employment". Commonwealth's answer alleged, among other things, that Loafman was an independent contractor at the time, was not in its general employment, and was not engaged in any business for the company but was on a personal mission. This action sounds solely in tort, and no contractual or other business relations were involved as between plaintiff Gay and defendant Commonwealth. After a jury trial, judgment was rendered on a verdict for plaintiff and against both defendants. Defendant Loafman did not appeal and the judgment has presumably become final as to him. Commonwealth appealed and in its brief argues two propositions.

The first proposition is to the effect that since its liability depended entirely upon the existence of the master-servant relationship, the trial court should have directed a verdict for Commonwealth, because at the time of the accident, Loafman was an insurance saleman, on solely a commission basis, paying his own expenses, working when and where he desired, driving his own automobile on routes of his choosing, and was an independent contractor and not a servant.

Since this contention has the effect of challenging the sufficiency of the evidence, the applicable rule is as follows:

"It is not reversible error to overrule a demurrer to the evidence and a motion for a directed verdict in a law action when there is any competent evidence reasonably tending to support the claim of the plaintiff therein." Lone Star Gas Co. v. Burk, 162 Okl. 259, 20 P.2d 170.

We must therefore determine whether there was any competent evidence reasonably tending to support the verdict on this question.

The evidence shows that until the morning of April 1st (the accident happened that afternoon), Loafman was working for Commonwealth pursuant to a written contract on a salary plus commission basis. The written contract is in evidence, and it provided detailed and specific controls as to the performance of certain phases of his duties. There was a memorandum of a further agreement that Loafman would be paid an additional $150 per month for recruiting and training other agents in the Oklahoma City area, and that he might be called upon to train other agents in other parts of the state, and would be paid $25 per day plus expenses for such work.

On the morning of April 1, 1957, Loafman returned to his Oklahoma City office for the purpose of carrying on his contractual duties in Oklahoma City. His supervisor, Mr. Carter, came to the office and it was agreed that his employment in the Oklahoma City area would cease and that he would return to Duncan, Oklahoma, as a selling agent in the Duncan and Lawton area. Loafman's uncontradicted testimony was that he would have the title of "District Agent" and could employ others to sell under him, and that he would also have the title of "Educational Director".

He was to devote his full time to selling life insurance for the company, except for such times as he might be called out by the company for educational work and the training of new agents. He would be selling insurance on a commission basis; however, he would be advanced $300 per month as advance commission and would receive $25 per day and would get "mileage" when he was sent to work with another agent and when on educational work. Advance commissions of $300 per month would be paid as long as deferred commissions would justify it. Commissions did not justify the advancements during the first two weeks, or the first month, and it appears that he was placed on a straight commission after the first of May, 1957. He explains this by saying that production dropped after his car had been wrecked. He was never required to repay the unearned advancements.

While no specific time was agreed upon for Loafman to go to Duncan to commence working under the new arrangement, Loafman testified that he was sure that Mr. Carter knew that he intended to go that day as he, Loafman, "was supposed to start on the new job". Loafman had planned to start selling in the Duncan area as soon as he could get located. The advancement for the first two weeks, $150 less social security payment as required by federal law, was paid for that period of time beginning April 1st, and ending April 15, 1957.

Loafman testified that he had no calls for supervising or educational work with other agents after he went to Duncan but testified further that the Company knew that he didn't have a car after the accident.

The old contracts between Loafman and the Company had all been in writing and these contracts were made subject to "rules and instructions which the Company has established or may establish". The "rules and instructions" are not in evidence in this case and we will not speculate as to the contents thereof. However, the evidence shows they exist, that they were applicable to the new (oral) contract, and that they could be changed by the Company at any time. This is probative evidence that the Company had the right to exercise some control over Loafman, though we are unable to determine the nature and extent of the actual control exercised or authorized to be exercised.

For use as a guide in determining whether Loafman was a servant or employee, or an independent contractor, the court instructed the jury, without objection, that it might consider the following factors: (1) the degree of control exercised by the employer, or the independence enjoyed by the contractor or agent; (2) whether the party is to be paid by the job or is to receive a certain salary by the day, week or month; (3) whether his employment consists solely in working for his employer; (4) the control that is exercised over him in the method and manner of performing the work; (5) whether the agent uses his own equipment, or whether the equipment, if any, so used, is owned and controlled by the owner; and (6) the nature of the contract, whether written or oral. Atlas Life Insurance Company of Tulsa v. Foraker, 196 Okl. 389, 165 P.2d 323; Ellis & Lewis v. Trimble, 177 Okl. 5, 57 P.2d 244; Getman-MacDonell-Summers Drug Co. v. Acosta, 162 Okl. 77, 19 P.2d 149.

Taking the "factors" in order, we list here as briefly as possible the uncontradicted evidence indicative of the master-servant relationship: Loafman was subject to call at any time for work with other agents or educational work; at the time of the accident he was being paid $300 per month whether he earned it or not (this arrangement ceased on May 1, after his car was destroyed); he worked solely for Commonwealth; his work was subject to some degree of control as authorized by the rules and instructions which could be changed by the company at any time; and his contract of employment was at least partly oral.

Thus it is seen that *under five of the six factors,* there was strong evidence of the

existence of the master-servant relationship at the time of the accident.

With regard to factor (5) above, we do not find it of particular significance that Loafman was driving his own automobile at the time of the accident and would use his automobile in the performance of his work. It is clear from the evidence that the company knew Loafman would use an automobile in the performance of his work in the Duncan-Lawton area and could not well operate without an automobile. As above shown he would receive "mileage" when on educational duties and his advancements were discontinued when on May 1, 1957, it became apparent that he could not perform without the use of the automobile.

Commonwealth argues vigorously that under the authority of Atlas Life Insurance Company of Tulsa v. Foraker, 196 Okl. 389, 165 P.2d 323, and under the facts presented here, Loafman was an independent contractor. In the first paragraph of the syllabus in the Atlas case we said:

"One who engages to perform certain services for another, according to his own manner and method, free from control and direction of his employer in all physical details as to the manner of performance of the service, except as to the result or product of the work, is an independent contractor."

This is but a re-statement of the well established general rule for use in determining whether one is an independent contractor. It is applicable in all cases where the question arises, and is not restricted to insurance salesmen alone. The specific finding in the Atlas case that the salesman was an independent contractor was made in the second paragraph of the syllabus and is as follows:

"Insurance agent, under the facts stated in the opinion, held independent contractor".

Whether the Atlas case is controlling here will depend upon a comparison of the decisive and controlling facts in the two cases.

The facts are similar at first glance, but substantially different upon detailed examination. In the Atlas case, the salesman's sole compensation at the time of the accident was his commissions, but in the instant case Loafman was receiving $300 per month at the time of the accident, whether earned or unearned. Commonwealth refers to this as an "advance on deferred commissions"; however, it is undisputed that there was no agreement to return any of this amount in case the commissions, when collected, did not equal the advance. As a matter of fact, this very thing happened for three consecutive months, including the month when the accident happened.

In the Atlas case the salesman's duties were soliciting business and selling insurance contracts. In the instant case Commonwealth had the right to call upon Loafman for training agents and for educational work not only in his own district but in other districts in the State of Oklahoma.

In the Atlas case it was pointed out rather forcefully that there was no agreement upon the part of the agent to devote all of his time to the business of his company and that he had not done so. In the instant case Loafman agreed to, and did, devote his full time to the business of his company. Further, in the Atlas case, it was said that "* * * There is no evidence that the company knew of Hewitt's (agent's) trip to Ada and vicinity or that he received any instructions from it to go to that point, except his testimony that Jones told him to see Hewes. * * * It therefore clearly appears that so far as the Insurance Company was concerned the trip was not specifically authorized by it or made pursuant to any specific instruction or direction on its part and that it had no knowledge or information about it". In the instant case there is a material difference. Loafman's services were terminated in Oklahoma City on April 1st. He had no further business in Oklahoma City. His advancements for his services in the Duncan-Lawton area commenced on April 1, 1957. Loafman was sure that Mr. Carter knew that he, Loafman, intended to go to Duncan that day

'(April 1) as he "was supposed to start on the new job". Furthermore, at the time of the accident, Loafman was not only going to Duncan to sell insurance but was going there to be "on call" from Duncan to train new agents and for educational work at $25 per day and "mileage".

In view of the differences in the facts in the two cases as above pointed out we are of the opinion that the Atlas case is not controlling.

Commonwealth argues under this proposition that Loafman was on a personal mission at the time of the accident, and even had he been an employee of Commonwealth, it was not responsible for his acts. It is pointed out by Commonwealth that Loafman's home was in Duncan and had been at all times since Loafman started working for Commonwealth in 1955, and that Loafman was on his way home at the time of the accident, citing Elias v. Midwest Marble & Tile Company, Okl., 302 P.2d 126, and other cases.

It is true that Loafman was on the way home, but under the evidence he would have remained in Oklahoma City for the remainder of the week except for his new assignment in Duncan. The immediate purpose in going to Duncan was to set up an office (in his home) and to start working in that area pursuant to the agreement above mentioned. At the time of the accident Loafman was carrying in his car a supply of company forms, letterheads, and application blanks.

█ Under the evidence in this case, which was undisputed, we hold that the court did not commit error in refusing to direct a verdict for Commonwealth. As a matter of fact, in view of the strong and persuasive nature of the plaintiff's evidence, a directed verdict for Commonwealth would obviously have been erroneous.

Commonwealth's second proposition is that the trial court committed reversible error in instructing the jury on the principle of ostensible or apparent authority.

All parties to this appeal agree that the case was not tried upon the theory of apparent authority, and our careful examination of the evidence discloses no possible set of circumstances in which it might be held applicable. The giving of the instructions concerned was plainly erroneous.

At the close of the evidence in this case attorneys stipulated, with the court's approval, that objections to the instructions might be taken at any time before motion for new trial was ruled upon. This obviously is a bad practice and the error here undoubtedly would not have occurred if the parties had been required to point out the alleged errors in the instructions prior to the reading of the instructions to the jury.

As heretofore observed, the case was not tried upon the theory of apparent authority and we have carefully searched the record to determine whether the principle of "ostensible or apparent authority" was emphasized to the jury. The opening statements to the jury and the arguments are not reported, and the only evidence we find in the record which could have any bearing upon ostensible or apparent authority is the testimony of Loafman to the effect that he was carrying company stationery and supplies in his car at the time of the accident. However, he further testified that he always carried these forms in his car, thus minimizing the importance of these forms in his car at the time of the accident. The other instructions given completely and correctly informed the jury as to the issues in the case so that, taken as a whole, they fairly submitted the issues to the jury. Such being the case we are unable to say that there is anything in the record to indicate that the jury was misled.

█ It is well settled that a judgment will not be disturbed on appeal because of an erroneous instruction, unless it appears reasonably certain that the jury was misled thereby, resulting in a miscarriage of justice. Megert v. Bauman, 206 Okl. 651, 246 P.2d 355. The salient test of reversible error in instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered, if the alleged errors had not occurred. Missouri-

**154**

Kansas-Texas Railroad Company v. Jones, Okl., 354 P.2d 415.

In view of the strong and persuasive nature of the evidence of plaintiff on the question of the master-servant relationship between Loafman and Commonwealth, at the time of the accident, above set out, we cannot say that the jury was misled, or that a different verdict would have been rendered if the erroneous instructions had not been given.

The judgment of the trial court is affirmed.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON, JOHNSON, IRWIN and BERRY, JJ., concur.

HALLEY, J., dissents.