D. H. CRAMER, Administrator of the Estate of Betty Jean Inhofe, Deceased, Plaintiff in Error,

v.

OSTEOPATHIC HOSPITAL FOUNDERS ASSOCIATION, INC., Defendant in Error.

No. 39963.

Supreme Court of Oklahoma.

June 11, 1963.

James M. Lee, Tulsa, Jack B. Sellers, Sapulpa, for plaintiff in error.

Wheeler & Wheeler, Tulsa, for defendant in error.

DAVISON, Justice.

This is an appeal by D. H. Cramer, Administrator of the Estate of Betty Jean Inhofe, deceased (plaintiff below), from a judgment rendered on jury verdict in favor of Osteopathic Hospital Founders Association, Inc. (defendant below) in an action in which plaintiff sought recovery for the alleged wrongful death of said deceased. Plaintiff's cause of action was based on the alleged negligence of the agents of defendant in failing and refusing to give deceased continuous and further treatment for the effects of a poison which she had swallowed and in erroneously advising the husband of deceased that her condition was such that she could be safely moved approximately 60 miles from defendant's hospital in Tulsa, Oklahoma, to a mental hospital in Vinita, Oklahoma. It is plaintiff's contention that the trial judge committed errors in the trial of the action that entitle plaintiff as a matter of law to a new trial.

Plaintiff urges that the trial court committed error in commenting upon the credibility of the defendant's witness, Dr. H, in the presence and hearing of the jury.

The record reflects that defendant operated a hospital in Tulsa, and that deceased and her husband maintained a home in Tulsa, but that she had for some time been a patient in a mental hospital at Vinita; that on the morning of Saturday, July 18, 1959, deceased's husband visited her at the hospital in Vinita and brought her to their home in Tulsa with the intention of returning her to the Vinita hospital later that day; that about noon on that date the deceased, while at her home, swallowed some roach poison containing sodium fluoride and her husband transported her to defendant's hospital where she was placed in an emergency room and her stomach repeatedly pumped out and she was given other treatment by three of defendant's interns, and a hospital bed was prepared. The witness, Dr. H, was on that date one of the interns.

The testimony on behalf of plaintiff was that the defendant's agents advised the husband to return deceased to Vinita, and that Dr. H stated it was safe to transport deceased to Vinita, and that this was done and deceased died that evening in the Vinita hospital.

The testimony of the interns (now licensed as doctors), including Dr. H, and

Dr. R (deceased's family doctor), testifying on behalf of defendant was that they advised the husband that deceased should remain at defendant's hospital. Dr. H also testified the husband stated deceased had to be returned to Vinita by 4 p. m. and that he told the husband not to take deceased back to Vinita and that he expressed no opinion as to whether it was "safe or not" to return deceased to Vinita. Plaintiff's attorney then sought to impeach Dr. H's testimony by use of his prior deposition in which he related a telephone conversation held at the time with Dr. R, in which the husband participated, wherein Dr. H stated a decision was made that the husband was not "going to keep his wife there. He was going to take her to Vinita." Upon being asked his recollection of giving such answer Dr. H stated: "I don't remember." In discussing the defendant's objection that the full text of the deposition relating to the conversation had not been read the attorney for plaintiff said:

"Well, I read the answer that he was being impeached on."

and the trial judge stated:

"I don't know that—I don't think that you impeached him. The man said, he did not remember some of that conversation."

Following the exchange between the attorney and judge and after further discussion an additional portion of the deposition was read in evidence to place the testimony in the deposition in context and reflect the meaning of such testimony. From our careful examination of the portions of the deposition shown by the record it is also our opinion that there was no impeachment of Dr. H's testimony. However it is well established that the credibility of witnesses and the weight of the evidence are questions of fact for the jury. The question is whether under the facts and circumstances the remark of the judge deprived the plaintiff of a fair and impartial trial. The attorney for plaintiff excepted to the court's remark but did not ask that the court withdraw the same from consideration of the jury.

In Moses v. Miller, Okl., 268 P.2d 900, there was a similar situation. In that case a doctor witness had been subjected to a long and detailed examination and the court stated the witness (naming him) was a "credible witness" and should be protected against insinuations by counsel. Therein we held after a review of the entire record that the appellant had not been prejudiced and relied upon our Harmless Error statute, 22 O.S.1961 § 1068, and prior decisions of this court and stated:

"Under the provisions of Title 22, § 1068 O.S.1951, a cause will not be reversed on account of improper or unwarranted remarks made by the court in the progress of the trial unless from an examination of the entire record it appears that a miscarriage of justice has resulted or that a party has been deprived of a substantial constitutional or statutory right."

From our examination of the record there is evidence which fully supports the finding inherent in the jury's verdict that defendant's agents recommended that deceased remain at the hospital and that no opinion was given that it was safe to move her to Vinita. Our conclusion herein should not be interpreted as condoning the statement made by the trial court as any such expression is improper and unwarranted.

The court instructed the jury that they were the judges of the facts, the weight of the evidence, and the credibility of the witnesses and that he had made rulings in the conduct of the trial and admission of evidence and in doing so had not expressed nor intimated the weight and credit to be given any evidence or testimony, nor indicated the conclusion to be reached by the jury in the case.

It is our conclusion that this contention of the plaintiff should be denied.

Plaintiff also contends that the trial court committed prejudicial error in giving

instruction No. 7, in that it was unintelligible, confusing and wholly incomplete for lack of a finding clause.

In this instruction the trial court enumerated in detail the circumstances and conditions which, if the jury found from the preponderance of the evidence did exist, would entitle plaintiff to recover. It did not conclude with the phrase "then your verdict should be for the plaintiff and against the defendant." The given instruction in its material parts is identical, word for word, with an instruction requested by plaintiff, except for the absence of the finding clause. The requested instruction was refused and instruction No. 7 and other instructions were apparently given in place thereof.

■ In Eckels v. Traverse, Okl., 362 P.2d 680, we said:

"Where the instructions given by the trial court clearly and reasonably present the issues joined by the pleadings and presented by the evidence, they are sufficient."

The court's instructions informed the jury as to the issues presented by the pleadings and the burden of the plaintiff to establish the material allegations of the petition and the liability of the defendant for the negligent acts or omissions of its agents. In Instruction No. 16 the jury was informed inter alia that should they find in favor of the plaintiff, then they could assess the amount of recovery for damages, if any, which were the direct and proximate result of the negligence of the defendant and its employees. Taking these and the other instructions as a whole we must conclude that the jury was fully informed as to the issues joined by the pleadings and presented by the evidence.

■ In Commonwealth Life Insurance Company v. Gay, Okl., 365 P.2d 149, 153, we stated:

"* * * The salient test of reversible error in instructions is whether the jury was misled to the extent of rendering a different verdict than it would have rendered, if the alleged errors had not occurred. * * *"

In view of the persuasive evidence of defendant that deceased should remain in defendant's hospital and denying any recommendation that it was safe to transport deceased to Vinita, we cannot say the jury was misled and confused, or that a different verdict would have been rendered if the claimed error in the instruction had not occurred.

Affirmed.