In the Matter of the Application of the Co-operative Law Company, Appellant, for Approval by the Appellate Division of Its Existence and the Continuance of Its Business.

Charles J. McDermott, Respondent.

Corporations — practice of law — corporations cannot practice law.

The practice of law is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for the purpose. The right to .practice law is in the nature of a franchise from the state conferred only for merit.

Nor is the practice of law a lawful business, except for members of the bar who have complied with all the conditions required by statute and the rules of the courts. As these conditions cannot be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in. As it cannot practice law directly, it cannot indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate.

A corporation organized for the purpose of engaging in the practice of law by means of a staff of lawyers is not a corporation within the meaning of the Business Corporations Law, which provides that "three or more persons may become a stock corporation for any lawful busi-

ness." The legislature did not thereby intend to include the work of the learned professions.

A corporation organized in 1901 for the purpose of practicing law is not a "corporation lawfully engaged in a business authorized by the provisions of any existing statute," or one of the other corporations excepted from the statute (L. 1909, ch. 483; Penal Law, § 280) forbidding corporations to practice law; and, hence, it is not a corporation whose "existence, organization or incorporation" may be lawfully approved by the Appellate Division of the Supreme Court of the department in which the principal office of said corporation may be located.

*Matter of Co-operative Law Co.*, 136 App. Div. 901, affirmed.

(Argued April 29, 1910; decided May 17, 1910.)

APPEAL from an order of the Appellate Division of the Supreme Court in the second judicial department, entered December 30, 1909, vacating a certificate of approval previously granted by it under chapter 483 of the Laws of 1909.

The facts, so far as material, are stated in the opinion.

*Darwin J. Meserole* for appellant. The business in which the petitioner is engaged is a lawful one. (*H. & G. M. Co.* v. *H. & W. M. Co.*, 127 N. Y. 252 ; *Le Grand* v. *M. M. Assn.*, 80 N. Y. 638 ; *Snow, Church & Co.* v. *Hall*, 19 Misc. Rep. 656 ; *Matter of Associated Lawyers Co.*, 134 App. Div. 350.) The court below had full power to make the order of June 18, 1909. (L. 1909, ch. 483.)

*Edward A. Freshman* and *Walter Shaw Brewster* for respondent. Chapter 483 of the Laws of 1909 did not provide for the approval by this court of the existence, organization or incorporation of business corporations. (*Matter of Associated Lawyers Co.*, 134 App. Div. 350.) The appellant corporation was not a corporation lawfully engaged in a business authorized by the provisions of any existing statute. (*People ex rel. Fairchild* v. *Preston*, 140 N. Y. 552 ; *Matter of White*, 118 App. Div. 869 ; *Hannon* v. *Siegel-Cooper Co.*, 167 N. Y. 246.) It is the policy of the state and of its laws to restrict the practice of the law to duly qualified individuals. (*People* v. *Woodbury Derm. Inst.*, 192 N. Y. 454 ; *Han-*

*non* v. *Siegel-Cooper Co.*, 167 N. Y. 246; *Matter of Clark*, 184 N. Y. 222; *Hershbach* v. *Ketchum*, 5 App. Div. 324; *Matter of Shay*, 133 App. Div. 547; *Stedwell* v. *Hartman*, 74 App. Div. 126; *Hess* v. *Allen*, 24 Misc. Rep. 393.)

*Edward R. O'Malley, Attorney-General (Edward H. Letchworth of counsel), for the State of New York.*

VANN, J.   On the 23d of November, 1901, The Co-operative Law Company, the appellant in this proceeding, claims to have been lawfully organized under the Business Corporations Law with power to carry on the business of practicing law. Its objects as stated in the certificate of incorporation are "to furnish to its subscribers legal advice and service; to operate in connection with the above a department of law and collections for the use and benefit of the subscribers of the company only, and to accomplish these objects said company proposes to employ and maintain a staff of competent attorneys and counsellors at law to give such advice; and to prosecute or defend, through such counsel, any claim or suit entrusted to its care by subscribers." Its original capital was $500, which was subsequently increased to $25,000. As it states under the oath of its president: "The company transacts through its staff of attorneys and counsellors at law, a general law business, including the prosecution and defense of suits; incorporation of business enterprises; drawing of contracts, leases and agreements, drawing and probating of wills, management of estates, etc.   The company's legal staff and general counsel are selected by the board of directors and all matters of general policy, including the general schedule of fees for legal services, are under the direct supervision and control of the directors."

By chapter 483 of the Laws of 1909 it was made unlawful for any corporation to practice law, to render or furnish legal services or advice, to furnish attorneys or counselors for that purpose, or to advertise for or solicit legal business.   (Penal Law, § 280.)   Violation of the statute by a corporation or its officers was made a misdemeanor.   The last sentence of the

31

section is as follows: " This section shall not apply to any corporation lawfully engaged in a business authorized by the provisions of any existing statute, nor to a corporation lawfully engaged in the examination and insuring of titles to real property, nor shall it prohibit a corporation from employing an attorney or attorneys in and about its own immediate affairs or in any litigation to which it is or may be a party, nor shall it apply to organizations organized for benevolent or charitable purposes, or for the purpose of assisting persons without means in the pursuit of any civil remedy, whose existence, organization or incorporation may be approved by the Appellate Division of the Supreme Court of the department in which the principal office of said corporation may be located."

Although the statute did not take effect until the first of September, 1909, still in June of that year the Co-operative Law Company applied *ex parte* to the Appellate Division of the Second Department " for an order pursuant to Chapter 483 of the Laws of 1909 approving the existence of your petitioner and the continuance of its business for the purposes mentioned in its certificate of incorporation."   On the 18th of June, 1909, said court " ordered that the existence, organization and incorporation of said Co-operative Law Company, a corporation organized under the Business Corporations Law of the State of New York and lawfully engaged in a business authorized by the provisions of that statute, is hereby approved, and that the corporation be and the same hereby is permitted to continue its business pursuant to the terms of its certificate of incorporation."

In November, 1909, an application was made by Charles J. McDermott, Esq., a member of the Kings county bar and the chairman of the committee on grievances of the Brooklyn Bar Association, upon notice to the Co-operative Law Company and to the attorney-general, to vacate said order, and after a hearing the Appellate Division vacated its previous order and denied the application for approval.   While no opinion was written it was recited in the order " That pet

tioner is not a corporation whose existence, organization and incorporation this court has power to approve under the terms of Chapter 483 of the Laws of 1909." From that order this appeal was taken.

We agree with the learned counsel for the appellant that the vital question is whether, prior to the act of 1909, a corporation could be lawfully organized to practice law. He claims that authority may be found in that part of the Business Corporations Law which provides that "three or more persons may become a stock corporation for any lawful business." (Business Corporations Law, § 2.) This means a business lawful to all who wish to engage in it. The practice of law is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified after a long course of study, both general and professional, and a thorough examination by a state board appointed for the purpose. The right to practice law is in the nature of a franchise from the state conferred only for merit. It cannot be assigned or inherited but must be earned by hard study and good conduct. It is attested by a certificate of the Supreme Court and is protected by registration. No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal. It is not a lawful business except for members of the bar who have complied with all the conditions required by statute and the rules of the courts. As these conditions cannot be performed by a corporation, it follows that the practice of law is not a lawful business for a corporation to engage in. As it cannot practice law directly, it cannot indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate. *Quando aliquid prohibetur ex directo, prohibetur et per obliquium.* (Co. Lit. 223.)

The relation of attorney and client is that of master and servant in a limited and dignified sense, and it involves the highest trust and confidence. It cannot be delegated with-

out consent and it cannot exist between an attorney employed by a corporation to practice law for it, and a client of the corporation, for he would be subject to the directions of the corporation and not to the directions of the client. There would be neither contract nor privity between him and the client, and he would not owe even the duty of counsel to the actual litigant. The corporation would control the litigation: the money earned would belong to the corporation and the attorney would be responsible to the corporation only. His master would not be the client but the corporation, conducted it may be wholly by laymen, organized simply to make money and not to aid in the administration of justice which is the highest function of an attorney and counselor at law. The corporation might not have a lawyer among its stockholders, directors or officers. Its members might be without character, learning or standing. There would be no remedy by attachment or disbarment to protect the public from imposition or fraud, no stimulus to good conduct from the traditions of an ancient and honorable profession, and no guide except the sordid purpose to earn money for stockholders. The bar, which is an institution of the highest usefulness and standing, would be degraded if even its humblest member became subject to the orders of a money-making corporation engaged not in conducting litigation for itself, but in the businesss of conducting litigation for others. The degradation of the bar is an injury to the state.

A corporation can neither practice law nor hire lawyers to carry on the business of practicing law for it any more than it can practice medicine or dentistry by hiring doctors or dentists to act for it. (*People* v. *Woodbury Dermatological Institute*, 192 N. Y. 454; *Hannon* v. *Siegel-Cooper Co.*, 167 N. Y. 244, 246.) The legislature in authorizing the formation of corporations to carry on "any lawful business" did not intend to include the work of the learned professions. Such an innovation with the evil results that might follow would require the use of specific language clearly indicating the intention. Recent legislation simply emphasizes and protects the established policy of the state and although *ex post facto* tends to show that

no such object was in contemplation when the general term "lawful business" was used in the statute to authorize the formation of business corporations. (L. 1909, chs. 483, 484.) Business in its ordinary sense was aimed at, not the business or calling of members of the great professions, which for time out of mind have been given exclusive rights and subjected to peculiar responsibilities. All statutes relating to the same subject-matter must be read together and construed as parts of an entire system. When the provisions of the Code of Civil Procedure regulating the practice of law and the conduct of lawyers are read in connection with the clause of the Business Corporations Law quoted above, it is obvious that they do not relate to the same subject-matter and that in enacting the latter the legislature was dealing with something utterly foreign to the former. (Code Civ. Pro. §§ 56 to 81; Judiciary Law, L. 1909, ch. 35.) The special provisions relating to lawyers were not modified or affected by the general provision authorizing the formation of business corporations.

The Appellate Division was clearly right in vacating its inadvertent order of approval, for it had no power to approve of an organization not authorized by law. (*Clark* v. *Scovill*, 198 N. Y. 279.) The appellant was not "a corporation lawfully engaged in a business authorized by the provisions of any existing statute," and according to no possible construction of the final sentence of section 280 could its "existence, organization or incorporation" be lawfully approved by the Appellate Division. These remarks are not intended to cover title guaranty companies, organized under the Insurance Law and authorized to examine titles, guarantee the correctness of searches and insure against loss by reason of defective titles. (§ 170.) The searching of titles is open to all and guaranty companies may employ either lawyers or laymen to transact their business. It is not claimed that they prosecute or defend the rights of others, but only their own, including such as the contract to indemnify gives them.

The appearance of the Attorney-General in this proceeding, pursuant to the notice served on him by order of the Appel-

late Division, although criticised by the appellant, was entirely proper, for his ancient common-law duty to represent the People called upon him to take part in a controversy in which the People are vitally concerned.

The order appealed from should be affirmed, with costs.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER and HISCOCK, JJ., concur.

Order affirmed.