

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann

AUSTIN 11, TEXAS

~~XXXXXXXXXXXX~~
ATTORNEY GENERAL

Hon. J. P. Bryan
County Attorney
Brazoria County
Angleton, Texas

Opinion No. O-831
Re: Legality of "bond proceedings contracts" between county and a party that has no license to practice law.

Dear Mr. Bryan:

This is in reply to your letter of May 9, 1939, in which you request the opinion of this department as to the legality of certain "bond proceedings contracts" which are described in your letter.

In your letter you make the following statement:

"For a certain sum, say one per cent of the amount of the bond issue, the bond broker will enter into a contract with Brazoria County to work out a schedule of the amount and type of bond to be sold for the particular project suggested, and then procure the services of an attorney to prepare the various orders, notices and other instruments required to make up the transcript of the bond proceeding, pay the costs of the election, printing of the bonds and furnish the opinion of a recognized bond attorney. It is conceivable that the various orders to be passed by the court, the notices, etc., which make up the transcript could be prepared by a person not an attorney; however, all proposals that have been made to the Commissioners' Court of this County have been that the brokers will furnish acceptable attorneys to prepare the transcript of the proceedings. As I understand it, perhaps more than half of the costs of proceedings contract will go to pay attorneys' fees."

You further state that the parties who contract with the county in the above described manner are not licensed to practice law, but are individuals who are interested in purchasing bonds. You request our opinion as to whether or not such contracts are illegal as constituting contracts providing for unlawful practice of law by unlicensed persons.

It being admitted that the persons who enter into the proceedings contracts described in your letter are not licensed to practice law, the first question to be determined is whether or not the undertakings which such persons have contracted to perform on behalf of the county of Brazoria amount to "practice of law".

The "practice of law", as generally understood, is the doing or performing of services in a court of justice in any matter depending therein throughout its various stages and in conformity with the adopted rules of procedure; but it is not confined to performing services in an action or proceeding pending in courts of justice and, in a larger sense, it includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matters may or may not be pending in any court. 7 C.J.S. p. 703.

The practice of law has also been defined as follows:

"In litigated matters it involves not only the actual representation of the client in court, but also services rendered in advising a client as to his cause of action or defense. The practice of law also includes the giving of advice or rendering services requiring the use of legal skill or knowledge." 138 Kan. 899, page 907, 28 P.(2d) 765, 769.

The foregoing definitions or substantially similar ones have been repeatedly approved by the appellate courts of numerous states. Some of the decisions which have approved one of the foregoing definitions of the practice of law or substantially similar ones, are herewith cited:

In Re:  Opinion of the Justices (Mass.) 194 N.E. 313; Rhode Island Bar Association v. Automobile Service Association (Rhode Island) 179 Atl. 139; Eley v. Miller, 34 N.E. 836; Paul v. Stanley (Washington) 12 Pa. (2) 401; People v. Peoples Stock Yards State Bank (Ill.) 176 N.E. 911; Crawford v. McConnell (Okla.) 49 Pac. (2) 551; Childs v. Smeltzer (Penn.) 171 Atl. 883; Cain v. Merchants Nat'l Bank & Trust Co. of Fargo (N.Dak.) 268 N.W. 719; Re: Eastern Idaho Trust Co. (Idaho) 288 Pac. 157; Fichette v. Taylor (Minn.) 254 N.W. 910.

In Texas by statute, Article 430a Penal Code of Texas, the practice of law is prohibited by any corporation, person, firm or association of persons except natural persons who are members of the Bar regularly admitted and licensed to practice law. Section 2 of Article 430a provides as follows:

"For the purpose of this Act, the practice
of law is defined as follows: Whoever (a) In a
representative capacity appears as an advocate or
draws papers, pleadings, or documents, or per-
forms any act in connection with proceedings
pending or prospective before a court or a jus-
tice of the peace, or a body, board, committee,
commission or officer constituted by law and
having authority to take evidence in or settle
or determine controversies in the exercise of
the judicial power of the State or subdivision
thereof; or, (b) For a consideration, reward or
pecuniary benefit, present or anticipated, direct,
or indirect, advises or counsels another as to
secular law, or draws a paper, document or instru-
ment affecting or relating to secular rights; or,
(c) For a consideration, reward, or pecuniary
benefit, present or anticipated, direct or indi-
rect, does any act in a representative capacity
in behalf of another tending to obtain or secure
for such other the prevention or the redress of
a wrong or the enforcement or establishment of a
right; or (d) For a consideration, direct or in-
direct, gives an opinion as to the validity of
the title to real or personal property, or (3) As
a vocation, enforces, secures, settles, adjusts
or compromises defaulted, controverted or disputed
accounts, claims or demands between persons with
neither of whom he is in privity or in the rela-
tion of employer and employee in the ordinary
sense; is practicing law. . ."

We believe it requires no extended argument to estab-
lish that the preparation of orders, notices and other instru-
ments which are necessary to give validity to an election to
authorize the issuance of bonds are matters which require legal
skill and learning on the part of the person undertaking to pre-
pare such instruments. The various constitutional and statutory
provisions with respect to the proceedings necessary to a valid
issuance of bonds must be strictly complied with, and it is a
matter of common knowledge in the legal profession that the field
of bond law is a specialized and technical one which requires ex-
perience and study by a trained mind as a prerequisite to the
practice of such branch of the law. It seems plain to us that a
person who undertakes to supervise all of the necessary steps
leading up to a bond election and the issuance of bonds thereun-
der, including the preparation of necessary orders, notices and
other instruments and the furnishing of a legal opinion upon the
validity of a bond issue is unmistakably undertaking to practice
law.

You are, therefore, advised that, in our opinion, the contracts described in your letter insofar as such contracts provide for the preparation of orders, notices, or other legal documents, and the furnishing of a legal opinion upon the validity of the bond issue constitute contracts to practice law. If such contracts are entered into by persons who are not licensed to practice law in this State, the same are illegal, for the reason that the subject matter of and the consideration agreed to be paid by the bond broker for such contracts constitute illegal transactions, prohibited as well by the common law as the statutory law of this State.

We reach this result whether we accept as the controlling definition of the practice of law that definition set forth in Section 2 of Article 430a, Texas Penal Code, or, independently of the statute, the definitions which have been announced and approved by various appellate courts throughout the United States. We believe that no serious contention can be made to the effect that subdivisions (b) and (c) of Section 2 of Article 430a, Penal Code of Texas, are not violated by the undertakings contained in the contracts described in your letter insofar as such contracts provide for the drawing of orders, notices and other legal instruments and the furnishing of legal opinions upon the validity of the bond issue.

The most recent discussion by a Texas Appellate Court of a question analagous to the one presented in your opinion request is found in Montgomery v. Utilities Insurance Co., 117 S.W.(2) 486, by the Beaumont Court of Civil Appeals. This case is now pending for decision in the Supreme Court of Texas. In the Montgomery case, an insurance company having issued a liability policy in which it agreed to investigate all accidents and claims covered by the policy and to defend its assured free of cost in any action brought to recover a loss covered by the policy, subsequently entered into an independent agreement with the assured whereby the insurance company agreed to defend any suit brought against its assured as a result of a certain collision. Such independent agreement was termed a "non-waiver" agreement, and it further provided that the insurance company should negotiate a settlement of the claim against its assured, and failing in such endeavor, that the insurance company would select and employ lawyers of its own choice to defend the case. However, the insurance company did not agree or bind itself to pay any judgment or court costs resulting from said suit. Attorneys selected and employed by the insurance company subsequently defendant a suit brought against the assured, and in such suit judgment was rendered against the assured. The owner of such judgment then instituted suit thereon against the insurance company. In holding that the non-waiver agreement was illegal and invalid, the Court said:

"That agreement, by its terms and by the construction placed upon it by the insurance company itself in its pleadings in the present suit, was a contract to practice law. It was therefore in violation of the penal statutes of this state which make it unlawful 'for any corporation or any person, firm, or association of persons, except natural persons who are members of the bar regularly admitted and licensed, to practice law. Act 43rd Leg. p. 835, Ch. 238, Vernon's Ann. Penal Code, Art. 430a. Being in contravention of the statute the agreement was illegal and of no effect.'"

" *** A corporation cannot practice law, and of course it cannot legally contract to do so. State v. C. S. Dudley & Co.Inc. 340 Mo. 852, 102 S.W. (2d) 895; State ex rel. v. Retail Credit Men's Ass'n, 163 Tenn. 450, 43 S.W.(2d) 918; Boykin vs. Hopkins, 174 Ga. 511, 162 S.E. 796; In re Co-operative Law Co., 198 N. Y. 479, 92 N. E. 15, 32 L. R. A. N. S. 55, 139 Am. St. Rep. 839, 19 Ann. Cas. 879; Eley v. Miller, 7 Ind.App. 529, 34 N.E. 836; Richmond Ass'n of Credit Men, Inc. v. Bar Ass'n, 167 Va.327, 189 S.E. 153; State ex rel. v. Merchants' Protective Corporation, 189 Cal. 531, 209 P. 363; Bennie v. Triangle Ranch Co. 73 Colo. 586, 216 P. 718; In re Otterness, 181 Minn. 254,232 N.W. 318, 73 A.L.R. 1319; Black & White Operating Co. Inc. v. Grosbart, 107 N.J.L. 63, 151 A. 630."

"*** And since a corporation cannot practice law directly it cannot do so indirectly by employing competent lawyers to practice for it. That would be an evasion which the law would not tolerate. 2 R.C.L. 946; State v. C.S. Dudley & Co., Inc. 340 Mo. 852, 102 S.W.(2) 895. The intervention of a corporation as general employer of the attorney between him and the client is destructive of the necessary and important relation of trust and undivided loyalty which must exist between attorney and client. 'Divided obligations in trust relations are obnoxious to the law, and in none more so than in that of attorney and client'. People v. People's Trust Co., 180 App.Div. 494, 167 N.Y.S. 767, 768."

The Montgomery case, supra, together with the decisions hereinafter cited effectively dispose of any contention which

might be made to the effect that the contracts described in your letter simply provide for the performance of legal services by a licensed attorney.

In the Montgomery case it was said that since a corporation cannot practice law directly, it cannot do so indirectly by employing competent lawyers to practice for it. Similarly, with respect to the contracts inquired about by you, it is our opinion that an unlicensed bond broker, not being authorized to practice law directly, cannot do so indirectly by employing competent lawyers to furnish him with legal opinions and legal instruments which the broker, in turn, transmits to the county. In the situation presented by your letter, no contractual relationship exists between the county and the licensed attorney. The county's dealings are with a bond broker and the bond broker in turn employs an attorney. No privity of contract nor relationship of attorney and client exists between the attorney employed by the broker and the county.

This same result has been reached in decisions of the Appellate Courts in other States. In Crawford v. McConnell (Okla.) 49 Pac. (2) 551, a contract was held illegal in which a person not licensed to practice law contracted with certain Oklahoma County tax payers to determine the legality of taxes assessed against property, to file protests thereof, and if necessary, employ attorneys to file suits for the recovery of illegal taxes.

The Court said:

"Clearly we think the plaintiff by his contract undertook to perform a type of service which could only be performed by one who had demonstrated his qualifications by obtaining a license to practice law."

In Cain v. Merchants National Bank & Trust Company of Fargo (N. Dak.) 268 N.W. 719, in which case the question under consideration was the legality of transactions in which a bank and trust company through attorneys employed by it undertook to prepare for a consideration deeds, mortgages, trust agreements, assignments and other legal instruments. The court held that such transactions constituted illegal practice of the law. With respect to the bank's contention - that such transactions were performed by legally licensed attorneys, the Court said:

"Since it (the bank) has no right to practice law directly, it cannot do so indirectly by employing a licensed attorney to practice for it, as that would be a mere evasion of the law."

Hon. J. P. Bryan, page 7 (O-831)

In Depew v. Wichita Association of Credit Men (Kansas), 49 Pac. (2) 1041, the Court said:

"One who confers with clients, advises them as to their legal rights, and then takes the business to an attorney and arranges with him to look after it in court is engaged in the practice of law."

In Re Cooperative Law Co. (N.Y.) 92 N.E. 15, it was held that since a corporation cannot practice law directly, it cannot do so indirectly by employing competent lawyers to practice for it, as that would be an evasion which the law will not tolerate. To the same effect are: In re: Otterness (Minn.) 232 N.W. 318, and People ex rel Los Angeles Bar Association v. Cal. Protective Corporation (Cal.) 244 Pac. 1089.

In the recent case of Rhode Island Bar Association v. Automobile Service Association (Rhode Island), 179 Atl. 139, an exhaustive and able discussion and review of the history of the decisions and reasons for prohibiting the practice of law by unlicensed persons is found. In that case an automobile service association, for a stated annual fee, agreed to furnish legal counsel free of charge to represent and defend members of the association in cases involving violations of traffic laws, and also agreed to furnish such counsel for the purpose of prosecuting and defending, on the part of the member, claims and suits for damages for and against the members. The Court after quoting the contract in detail says:

"Each of the several numbered paragraphs of the respondent's (A.S.A.) contract with its customers calls for legal service of some kind, except paragraphs 3, 6 and 11. True, this legal service is to be rendered not by them personally, but by counsel designated by them. Ostensibly such service is free, but actually it is by far the major part of the consideration which the customer receives for his membership fee. Out of eleven paragraphs, only three are not of a legal nature, and two of those are so inconsequential as to be disregarded.

"These respondents then are engaged in selling legal advice and assistance in association with a duly licensed member of the bar of this court. Their association with this member does not absolve them from responsibility. We see no difference in their case from that of the respondent in Re Co-operative Law Co. (1910) 198 N.Y. 479, 92 N.E. 15, 16, 32 L.R.A.

(N.S.) 55, 139 Am.St.Rep. 839, 19 Ann.Cas.
879, where the court says:   'The relation of
attorney and client is that of master and
servant in a limited and dignified sense, and
it involves the highest trust and confidence.
It cannot be delegated without consent, and
it cannot exist between an attorney employed by
a corporation to practice law for it, and a
client of the corporation, for he would be sub-
ject to the directions of the corporation, and
not to the directions of the client."

In another place in the opinion, the Court says:

"Thus, indirectly through the respondent
Morris, they have been assuming to conduct a
law practice on a wholesale business scale
reaching throughout the state. What these re-
spondents cannot legally do directly they may
not do indirectly. They say they have con-
ducted this business for twelve years without
interference. This may well be, but mere length
of time does not and cannot convert into a legal
act what is illegal."

In view of the above cited authorities and others
too numerous to quote in this opinion, we are constrained to
hold that the contracts described in your letter, insofar as
such contracts provide for the furnishing of legal opinions
on bond issues and for the preparation of orders, notices and
other documents of a legal nature, contemplate and provide for
the practice of law by an unlicensed person and, therefore,
such contracts are illegal.

Yours very truly
ATTORNEY GENERAL OF TEXAS

By /s/ Robert E. Kepke
Robert E. Kepke, Assistant

APPROVED AUG 25, 1939
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED: OPINION COMMITTEE
BY:        BWB. CHAIRMAN

REK:BT:wb