[No. 29922. Department Two. July 15, 1946.]

EMERY NEAL CLARK, JR., *Appellant,* v. HOUSING AUTHORITY OF THE TOWN OF PORT ORCHARD, *Respondent.*[1]

[1] Reported in 171 P. (2d) 217.

 

*Frederick B. Cohen* and *Ronald E. Danielson,* for appellant.

*Watt & Perrine,* for respondent.

*The Attorney General* and *Lyle L. Iversen, Assistant, amici curiae.*

MILLARD, J.—Plaintiff, who is an attorney at law, instituted this action against defendant municipal corporation and one R. W. Watt, who is now an attorney for defendant, for restoration as a returned serviceman to his position as attorney for defendant under the provisions of Rem. Supp. 1943, § 10758-3 (Laws of 1941, chapter 201, p. 592, § 1, as amended by Laws of 1943, chapter 274, p. 853, § 1), which, so far as pertinent, reads as follows:

"Any man or woman who is a resident of this state, and who . . . shall hereafter become a member of the United States army, . . . and who has been or shall be called to active service therein, and who, in order to perform such service has left or leaves a position, other than a temporary position, in the employ of any employer, and who (1) is honorably discharged . . . (2) is still qualified to perform the duties of such position; and (3) makes application for reemployment within forty (40) days after he is relieved from such active duty or service—(a) if such person was in the employ of a private employer, such employer shall restore said person to such position or to a position of like seniority status and pay, unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so, or (b) if such person was in the employ of this state or any municipality or political subdivision thereof, such person shall be restored to such position or to a position of like seniority status and pay: *Provided, however,* That restoration shall not take place if such service exceeds the period of the tenure of office of the elective or appointive official from whom the employment flows, and provided further that the circumstances surrounding the governmental office in question have not so changed as to make restoration impossible, unreasonable or against the public interest."

The statute (Rem. Supp. 1941, §§ 10758-5, 10758-6, Laws of 1941, chapter 201, pp. 593, 594, §§ 3, 4) provides that the returned serviceman shall be restored to his former position without loss of seniority rights and shall not be discharged from his restored position without cause within one year after such restoration. In the event the employer refuses to comply with the provisions of the statute, such employer may be required to compensate the returned serviceman for any loss of wages or benefits suffered by reason of the employer's unlawful act.

Plaintiff is a duly licensed attorney at law and has practised his profession since his admission to the bar in 1935 except for the time of his military service. R. W. Watt, who is an attorney at law in the city of .Port Orchard, was executive secretary and manager of the housing authority April 1, 1943, when plaintiff entered the service of the housing authority as its attorney on a part-time basis as a result of negotiations with Watt. This was a permanent position. The housing authority on June 1, 1943, adopted a resolution which reads as follows: "Upon motion duly made and seconded and passed, the employment of Neal Clark as attorney for the board was confirmed."

Plaintiff, who had no private practice of his own at Port Orchard, also entered the employment of R. W. Watt April 1, 1943, to assist the latter in his private law practice. Plaintiff had two employers: R. W. Watt, who paid him $150 monthly, and the housing authority, which paid him $150 a month by regular salary check, on which was the notation: "Salary for legal services during the period . . ."

Plaintiff's duties consisted of performing the legal work of the housing authority, including advice to its officers and employees respecting their duties and responsibilities, and handling all unlawful detainer actions and notices to vacate. His duties were under the direction and supervision of defendant's board of directors. His office was in the law office of R. W. Watt, who, on behalf of the housing authority, unsuccessfully endeavored June 10, 1943, to obtain a draft

deferment for plaintiff as an essential employee of the housing authority engaged in an essential war project.

Plaintiff was employed by defendant until June 15, 1943. He became a member of the armed forces of the United States June 19, 1943, in response to a notice from his draft board to report for induction. A short time subsequently, another attorney was employed to take plaintiff's position with the housing authority. While plaintiff was still in the service and after the attorney who succeeded him had resigned, R. W. Watt resigned as executive secretary of the housing authority and was appointed to the position, which he still holds, of attorney for the board.

Thirty-two days after his honorable discharge February 19, 1944, from the United States army, plaintiff made written application to defendant for restoration to his former position. Defendant received, pursuant to its request therefor, a legal opinion from the regional attorney for the Federal public housing authority regarding the obligation, if any, of the defendant to re-employ plaintiff. On objection of defendant, the trial court refused to admit that opinion in evidence. May 14, 1945, defendant by letter advised plaintiff: "Therefore, it is our opinion, based upon the expressed legal opinion of the Regional Counsel, that you are not eligible to reinstatement."

This action was originally brought to require plaintiff's reinstatement to his position, or in the alternative that he be awarded one year's salary at the rate of $150 monthly, together with any increases in salary during the period that he was in the United States army. As more than one year had elapsed from the time of his application for reinstatement to the time of the trial, plaintiff's action is now one to recover damages as provided by the statute.

At the close of plaintiff's case, defendant's motion for dismissal of the action was granted on the ground of failure of proof, the court expressing the view that the relationship of attorney and client was of such a nature that the statute invoked was not applicable to the facts in the case at bar. From judgment of dismissal, plaintiff has appealed.

There is only one respondent—the housing authority—as the action has been dismissed as to R. W. Watt.

Respondent contends that an employer and employee relationship did not exist between it and appellant, as the latter was an attorney for the former; therefore appellant's status was not one which the state veterans' re-employment law (Laws of 1941, chapter 201, as amended by Laws of 1943, chapter 274) protects. Respondent further argues that the written advice of the regional attorney for the Federal public housing authority to respondent's board of directors respecting appellant's right to reinstatement was not relevant to the issue whether the directors, by such refusal, violated the statute which requires restoration to employment of honorably discharged servicemen.

 There is nothing in the veterans' re-employment statute from which it may be reasonably inferred that the legislature intended to except from the statute professional people and those holding confidential relationships such as attorney and client and physician and patient. Had the legislature contemplated such exclusion, it would have written the exception into the statute. The state veterans' re-employment statute was taken from the Federal selective training and service act of 1940, as later amended (50 U.S.C.A. (App.), § 308). See, also, American Law of Veterans, by Kimbrough and Glen.

 Our statute must be considered as adopting the interpretations and constructions of the Federal statute by the Federal courts. *State v. Tranchell,* 164 Wash. 71, 2 P. (2d) 64.

In *Kay v. General Cable Corp.,* 144 F. (2d) 653, which involved reinstatement of a physician who had been employed on a part-time basis by a corporation as its medical director, it was argued—the same contentions as in the case at bar—that professional services are not within the protection of the statute, and that the services constitute the work of an independent contractor. The court said:

"The status which the Statute protects is 'a position . . . in the employ of' an employer—an expression evidently chosen with care. The word 'employee' was not

used. While it may be assumed that the expression which was adopted is roughly synonymous with 'employee,' it unmistakably includes employees in superior positions and those whose services involve special skills, as well as ordinary laborers and mechanics. Of course, the words are not applicable to independent contractors, but, except for casual or temporary workers, who are expressly excluded, they cover almost every other kind of relationship in which one person renders regular and continuing service to another.

"The policy of the Act is stated in Sec. 1 (b), 50 U.S.C.A. Appendix § 301 (b), to be that 'the obligations and privileges of military training and service should be shared generally in accordance with a fair and just system . . .' though such declaration was hardly needed. Every consideration of fairness and justice makes it imperative that the Statute should be construed as liberally as possible so that military service should entail no greater setback in the private pursuit or career of the returning soldier than is unavoidable. The question here presented, therefore, is not to be solved by the application of abstract tests or formulae; but the factors which usually determine the nature of a disputed relationship must be considered in the light of the purpose which Congress intended to accomplish.

"Of course, the defendant could not exercise any control over the details of the plaintiff's work as a physician. The method of physical examination, the diagnosis and the treatment of injuries were necessarily his sole province, and if the right to dictate the manner of doing the work were the final and decisive test the plaintiff could not be classed as an employee. . . . The relationship which resulted from all these various factors, viewed in the light of the purpose of the Statute, is clearly a position in the employ of the defendant and is perhaps better described by that term than any other which could be found."

Our statute, Laws of 1941, chapter 201, as amended by Laws of 1943, chapter 274) provides for the restoration to his former position or job one "who, in order to perform such service has left or leaves a position, other than a temporary position, in the employ of any employer." It is inconceivable that the restricted meaning given by the trial court to the word "employ" as used in the statute was contemplated by the legislature. Had the legislature intended to deny to professional people and those holding confidential

relationships the benefits of the statute, it would have written such exception into the statute.

In *State v. Gohl,* 46 Wash. 408, 90 Pac. 259, the defendant was charged with violation of the statute which prohibited one from having in his employ an armed body of men. Defendant contended that he never organized, maintained, or employed an armed body of men. We said:

"For the purposes of this appeal, it may be conceded that he neither organized nor maintained the men; and if the word 'employ' in the statute is used in the sense of 'to hire'—in other words, if it was incumbent on the state to show that the relation of master and servant existed between the appellant and the armed men—the state has failed in its proof. But is the meaning of the word 'employ' thus restricted?"

We held that the word "employ" means to use, to have in service; to cause to be engaged in doing something; to make use of as an instrument, a means, a material, etc., for a specific purpose, and that, if the defendant made use of an armed body of men as an agency to accomplish some specific purpose, he employed them within the meaning of the statute. In other words, we applied the rule in that case, as we apply it in the case at bar, that the language of the statute is to be construed in the light of the object which the statute was intended to accomplish.

The housing authority statute (Laws of 1939, chapter 23, p. 59 [Rem. Rev. Stat. (Sup.), § 6889-5]), under which respondent operates, authorizes in the following language the position which appellant held prior to his entry into the armed forces:

"For such legal services as it may require, an authority may call upon the chief law officer of the city or the county or may employ its own counsel and legal staff . . ."

The plain language of the foregoing statute is that the housing authority may *employ* an attorney, which is the same language used in the veterans' re-employment statute. The terms are the same. There can be no question but that the legislature intended them to have the same meaning in both statutes.

Attorneys may be, and in many cases are, employees. Railway companies, title companies, and many large corporations regularly have attorneys on their payroll who are employed just as truly as are any of the other persons who perform services for them. Attorneys in the office of the corporation counsel of a city are employees. When lawyers are regularly hired at a fixed salary per month and not merely to handle a particular matter, they are held by the courts to be employees. The relation of attorney and client is, as stated in *In re Co-operative Law Co.*, 198 N. Y. 479, 92 N. E. 15, that of master and servant in a limited and dignified sense. Appellant was *employed*, as the resolution of respondent's board of directors stated.

Respondent argues that, by the very nature of appellant's profession, respondent was not able to control the manner in which appellant performed his work or the means by which he accomplished it; therefore, respondent was of necessity dependent upon appellant's professional knowledge and his specialized skill in the performance of any legal work which was done or advice which was rendered, from which it follows that there was an absence of an employer-employee relationship between appellant and respondent.

A machinist or an expert saw filer is not controlled by his employer in the manner in which he performs his work or the means by which he accomplishes it. The employer in each of those cases is dependent upon the specialized skill of either of those employees in the performance of the work which they are doing.

Our government, in an emergency, conscripted, as it had the right to do, men for the armed forces. As a corollary thereof, the United States government and our state extended, through the veterans' re-employment statutes, protection to professional man, as well as laborer, of restoration to the employment he was required to leave to serve his country. The protection is not restricted to any class, nor to any grade nor degree of skill. The protection is of each and every person who leaves a position in the *employ* of an employer to enter the military service.

"To employ is to engage or use another as an agent or substitute in transacting business, or the performance of some service; it may be skilled labor or the service of the scientist or professional man as well as servile or unskilled manual labor." *Gurney v. Atlantic & Great Western R. Co.,* 58 N. Y. 358, 371.

█ The assignment that the court erred in refusing to admit in evidence the legal opinion of the regional attorney for the Federal public housing authority is without merit. The opinion entertained by the regional attorney was not relevant to the issue whether respondent violated statute invoked by appellant.

In the absence of competent evidence justifying respondent's denial of his application for restoration to his former position, appellant was entitled to the relief sought. The motion to dismiss should have been overruled, as appellant made a *prima facie* case.

The judgment is reversed, and the cause remanded with direction to the trial court to grant a new trial.

BEALS, C. J., BLAKE, ROBINSON, and JEFFERS, JJ., concur.