## REPUBLIC LIFE INSURANCE CO. v. DOBSON.

No. 33911.   Dec. 26, 1950.

*226 P. 2d 402.*

Rex H. Holden, of Oklahoma City, for plaintiff in error.

Monnet, Hayes & Brown, of Oklahoma City, for defendant in error.

JOHNSON, J. This is an equitable action for an accounting. Judgment was rendered against the plaintiff in error in favor of the defendant in error, from which plaintiff in error appeals.

The parties here occupied reverse relative positions in the trial court, and they will be referred to hereafter as they there appeared.

The plaintiff and defendant entered into a written contract dated February 10, 1941. The portions of the contract which are pertinent are as follows:

"This contract, made this 10th day of February, 1941, to take effect the 10th day of February, 1941, between Republic Life Insurance Company of Oklahoma City, Oklahoma, a corporation, hereinafter described as First Party, and Dewey B. Dobson, of Oklahoma City, County of Oklahoma, State of Oklahoma, hereinafter described as Second Party.

"Witnesseth, that First Party hereby appoints Second Party its special agent

to personally procure applications for life insurance in the Republic Life Insurance Company, on the following terms and conditions:

"Territory Rights

"1. Second Party is authorized to operate in the following district: State of Oklahoma.

"General Agreements

"2. Second Party agrees to devote his whole time to the performance of his duties as Special Agent of First Party and agrees to follow and be governed by the conditions hereof and by such rules and regulations for the conduct of its business as First Party has heretofore established, and/or may hereafter establish, whether contained in its rate book or otherwise. Second Party further agrees to exert his best endeavors in keeping all insurance effected hereunder in full force and effect so as to avoid lapsed policies.

" . . .

"11. In the event of the termination of this contract within three years from the date it takes effect, no renewal commissions shall be payable after such termination. If Second Party complies with all the terms and conditions of this contract, and continues in the exclusive service of First Party for a period of not less than three years from the date this contract takes effect, then renewal commissions shall be payable as provided in Clause 9, subject to the provisions of this contract. In the event of the termination of this contract under conditions that provide for the payment of renewal commissions, such renewal commissions shall be subject to a collection fee of 1 percent of the renewal premiums, except if Second Party should become connected with or do business directly or indirectly for any other life insurance company, then the collection fee shall be 2 percent of the renewal premiums, and provided further that such renewal commissions shall continue only so long as the insurance in force written under this contract and on which renewal premiums are being received by the company equals or exceeds $100,000.

"First Party agrees to waive the foregoing three year service requirements if this contract is terminated by the death, or total physical or mental disability, of Second Party while operating actively under this contract during such three year period. . . .

" . . .

"20. No modification of this contract shall be valid unless made in writing by First Party by its President, one of its Vice-Presidents, its Secretary or an Assistant Secretary.

" . . .

"22. If Second Party is a partnership the death of any member or dissolution of the partnership shall terminate this agreement. If Second Party shall fail to comply with any of the conditions of this contract, same may be terminated by First Party at its election. The forbearance or neglect of First Party to insist on the performance of this contract in case of its violation by Second Party shall not constitute a waiver of such rights and privileges. Termination hereof may be further had by either party hereto upon mailing the other party at its last known address thirty days' notice in writing. Upon termination hereof Second Party shall within thirty days thereafter pay in cash all sums due hereunder and shall immediately deliver to First Party all rate books, letters, records and supplies connected with the business of and/or belonging to First Party."

Under this contract plaintiff began performance immediately and continued until October 12, 1942. A few days prior to said date plaintiff had been placed in 1-A classification by his local draft board and ordered to report for induction into the armed forces of the United States. Prior to the date of his induction, he enlisted in the United States Navy, and from October 12, 1942, until January 25, 1945, he was in the navy and performed no further service under the contract until February 15, 1945, when he returned to work and so continued until September 11, 1946, when he voluntarily ceased further performance under the contract.

The company continued to pay renewal commissions as provided for in the contract until February, 1947, at which time defendant ceased paying commissions because it believed that plaintiff had lured another agent away from the company; and, asserting as a further reason that it had by mistake paid renewal commissions since the termination of the employment.

It is contended by defendant, among other things, that the court erred in rendering judgment in favor of plaintiff, urging that the cause be reversed, with directions to render judgment for defendant.

Under the provisions of the Selective Training and Service Act, 50 U.S.C.A. Appendix, §308, if applicable, the time spent in service counted as time spent under the contract, so that after the termination of the contract plaintiff was entitled to renewal commissions so long as he had over $100,000 on the books of the company.

Section 308 provides:

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for re-employment within ninety days after he is relieved from such training and service. . . .

" . . .

"(B) If such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

" . . .

"(c) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (b) or subsection (b) shall be considered as having been on furlough or leave of absence during his period of training for service in the land or naval forces, shall be so restored without loss of seniority, shall be entitled to participate in insurance or other benefits offered by the employer pursuant to established rules and practices relating to employees on furlough or leave of absence in effect with the employer at the time such person was inducted into such forces, and shall not be discharged from such position without cause within one year after such restoration."

Plaintiff argues that being an employee he was covered by the Act, and when the company established rules and practices relating to employees on furlough or leave of absence, that he was to be considered as having been on furlough or leave of absence during his period of training and service in the navy, and should have been restored without loss of seniority and all benefits offered by the company, including renewal commissions. The defendant argues that plaintiff was an independent contractor, and did not hold a position within the terms of the Act, and therefore the Act was not applicable to this relationship.

The evidence of plaintiff discloses that in the performance of his contract with defendant he exercised complete control and discretion concerning his methods of performance, without the exercise of any control by the insurance company in the details of soliciting applications for insurance. The evidence of defendant was substantially the same as plaintiff's.

In Atlas Life Insurance Co. of Tulsa v. Foraker, 196 Okla. 389, 165 P. 2d 323, we held that where the evidence showed that the insurance agent was free to use his own methods and his own time, without the exercise *or right of exercise* of any control by the insurance company, in the details of soliciting applications for insurance, the status of such agent was that of an independent contractor. In the opinion we said:

"The controlling or principal test is generally stated to be as to whether or not the employer, using that term

in a broad sense, has the *right to control* the physical details of the work to be done by the agent, or whether the latter represents the former only as to the result to be accomplished." (Emphasis ours.)

In Yellow Cab Co. et al. v. Wills et al., 199 Okla. 272, 185 P. 2d 689, we said that the right of the employer to control or direct the work is the decisive test.

In Karas v. Klein et al., D. C., 70 Fed. Supp. 469, it was said:

"It is not necessary that the employer actually shall direct the manner in which the services are performed, but 'it is sufficient if he has the right to do so.' "

An examination of the contract between plaintiff and defendant shows that the company retained the right to control or direct the activities or work of the plaintiff. Under this contract plaintiff was required to give his exclusive service to the company; that it required the services rendered be his personal services rather than the services of some person whom he might employ; that in the execution of his duties, plaintiff was subject to rules and regulations of the company, whether those rules and regulations had been previously made, whether they might be made in the future, and in any form in which they might be made; that those rules and regulations were not required to appear in the rate book or the contract; that so far as the contract is concerned they could be oral or otherwise; that the contract places no limitations on the right to make such rules and regulations and makes it apparent that those rules and regulations might concern the smallest details involved in carrying out the duties of plaintiff under the contract; that the contract itself, regardless of rules and regulations, regulated the manner of acting on applications, the manner of delivering policies, and of securing inspection receipts and payment of premiums; that plaintiff was required to comply with state laws, to keep full records and made the company the sole judge of disputes; that the company could send policies to plaintiff for delivery; that plaintiff was required to collect renewal receipts sent to him by the company for collection without any additional compensation other than his commissions derived from selling contracts of insurance.

Under these facts and the rule that the Selective Training and Service Act, supra, should be construed as liberally as possible, so that military service should entail no greater setback in the private pursuit or career of returning servicemen than is avoidable, we think, and so hold, that the plaintiff was not an independent contractor but held a position and was entitled to return to such position, with full seniority, status and pay, which would include renewal commissions under the contract. Loeb v. Kivo, D. C., 77 F. Supp. 523; Lee v. Remington Rand, D. C., 68 F. Supp. 837; MacMillan v. Montecito Country Club, D. C., 65 F. Supp. 240; Heller v. Inter-Boro Savings & Loan Association, 166 F. 2d 83; Kay v. General Cable Corporation, 144 F. 2d 653; Karas v. Klein, supra; Clark v. Housing Authority of Town of Port Orchard, 25 Wash. 2d 419, 171 P. 2d 217; Modern Motors, Inc., v. Elkins, 189 Okla. 134, 113 P. 2d 969.

Defendant further contends that there was a departure in the reply of plaintiff from the allegations of his petition and that the court erred in not so holding. Plaintiff's petition pleaded the contract, the dates and length of time of his service under the contract and his military service, the details of which are outlined above. The defendant filed an answer and cross-petition. The answer was a general denial, and the cross-petition alleged that it gratuitously paid plaintiff while in the U. S. Navy $941.08 in commissions; that by mistake and oversight it paid him, after his discharge from the navy, the sum of $473.42 in commissions that were not due him, and prayed for judgment against plaintiff for $473.42 and costs, to which plaintiff filed a reply which

consisted of a general denial wherein the plaintiff realleged the facts in his petition and further alleged, in substance, that defendant through its president and supervisors advised him and other agents that the special agent's contract, which was made a part of his petition, would be continued in full force and effect and plaintiff would be entitled to and be paid his renewal commissions the same as if plaintiff had not entered military service, and adduced evidence in support of the allegation.

We deem it unnecessary to discuss the rules of departure in pleading, since the contract and the time spent under the contract and in military service is undisputed.

The testimony objected to by defendant and offered in support of plaintiff's allegation, if error, was harmless as it would be immaterial whether the president and supervisors advised plaintiff as to his rights which emanated from the Selective Service and Training Act, supra. Therefore, this contention is without merit.

It is next contended by defendant that it was error to allow plaintiff to adduce oral testimony as to the established rules and practices of defendant relating to employees on furlough or leave of absence which were effective at the time plaintiff entered the armed service of his country, asserting that such evidence constituted an oral modification of the contract. This contention also is without merit. Under sec. 308, subsection (c) of Selective Service and Training Act, supra, such evidence was competent.

The judgment is affirmed.

DAVISON, C. J., ARNOLD, V. C. J., and CORN, LUTTRELL, and HALLEY, JJ., concur. GIBSON and O'NEAL, JJ., dissent.