# CIRCUIT COURT OF HENRICO COUNTY

Christian & Barton, L.L.P.

v.

Allens Steel Products, Inc.

March 18, 2010

Case No. CL09-2019

BY JUDGE CATHERINE C. HAMMOND

This matter is before the Court following trial without a jury on March 16, 2010. Plaintiff claims unpaid attorneys' fees and costs expended on behalf of defendant.

The evidence showed that, in 2008, the plaintiff law firm agreed to represent the defendant (Allens) in a construction dispute with Boyd Corporation (Boyd). Boyd, a general contractor, had sued Allens in the Circuit Court of Chesterfield County claiming $76,000.00 plus its attorneys' fees based on Boyd's written contract with Allens. The June 2008 engagement letter set forth agreements on hourly rates for Mr. Moore and other attorneys and types of disbursements (costs). The parties agreed to monthly billing and monthly payments. They also agreed that Allens could terminate the representation at any time.

The work proceeded, and a trial date was scheduled for February 26-27, 2009. Allens filed a Counterclaim against Boyd. On September 15, 2008, Mr. Moore wrote to Allens advising of the trial date and analyzing the costs of litigation and the advantages of settlement. (PX13.) In November, Mr. Allen expressed concerns about fees and requested an estimate. In response, on November 24, Mr. Moore prepared a three-page letter to "summarize where things stand in this case and provide estimates of future attorneys' fees." (PX14.) The same letter reminded Allens that its discovery responses were three-weeks overdue.

By December 2008, discovery was in full swing and Allens had moved for summary judgment. The deadlines in the Pretrial Scheduling Order were looming. Expert witnesses would be needed to survive Boyd's evidence of deficiencies in Allens' work product. On January 26, 2009, Christian & Barton was successful in obtaining summary judgment against Boyd; all that remained were Allens' counterclaim and the risk of Boyd's appeal from the summary judgment ruling. On February 9, 2009, the was case settled, essentially on the same terms Mr. Moore had recommended earlier. Allens did not pay three monthly invoices totaling $34,161.65.

Allens' principal argument is that the attorneys' fees were too high and exceeded the estimate. Mr. Allen testified that he "hung his hat on" the estimate, as he does in his construction business, and did not expect to have fees accumulate in the amount that they did. Mr. Allen also testified that he wanted to settle the case because the amount in controversy was small in proportion to the cost of continued litigation. This testimony was contradicted by the language of the written estimate, by the firm's billing records, and by Mr. Moore's description of the work required to represent Allens.

The estimate communicated the upside risk of additional fees. The firm's monthly invoices set forth detailed records of services provided. They show that Mr. Allen and Mr. Moore were in frequent contact about the case, the strategy, and the duties of Allens, Boyd, and their counsel. Mr. Allen had to know that these duties were time-consuming. He received monthly statements of the work. The statements show that Mr. Moore and Mr. Allen conversed on numerous dates; they discussed settlement in particular on September 15, October 16, December 3, 5, and 8, January 7 and 8, January 14, January 21, and January 26. Additional entries show that Mr. Moore repeatedly discussed settlement with Boyd's attorney. There is no suggestion in the records that Allens wanted to settle before February 9, 2009. On the contrary, the records show that Mr. Moore pushed Mr. Allen to settle and Mr. Allen resisted. Finally, Mr. Allen's testimony fails for its misunderstanding of the attorney's responsibility.

The practice of law requires the able command of an esoteric body of knowledge. It is neither logical nor meaningful for Mr. Allen to draw a comparison between an estimate for a construction project and an estimate for legal services. Legal services are different.

> The practice of law is not a business open to all, but a personal right, limited to a few persons of good moral character, with special qualifications ascertained and certified

after a long course of study, both general and professional, and a thorough examination by a state board appointed for the purpose. The right to practice law is in the nature of a franchise from the State, conferred only for merit. It cannot be assigned or inherited, but must be earned by hard study and good conduct. It is attested by a certificate of the supreme court, and is protected by registration. No one can practice law unless he has taken an oath of office and has become an officer of the court, subject to its discipline, liable to punishment for contempt in violating his duties as such, and to suspension or removal.

*Richmond Ass'n of Credit Men, Inc. v. The Bar Ass'n of the City of Richmond*, 167 Va. 327, 334-35 (1937) (quoting *In re Co-Operative Law Co.*, 198 N.Y. 479 (1910)). An attorney in Virginia must be admitted to the bar as a licensed professional. The attorney must comply with the Rules of Professional Conduct set forth in Part 6 of the Rules of the Virginia Supreme Court or face loss of license. For example, Rule 1.3 provides "A lawyer shall act with reasonable diligence and promptness in representing a client." Rule 1.16 provides that the attorney must continue to represent the client until the Court permits the attorney to withdraw from representation. The evidence in this case showed that Christian & Barton fulfilled its responsibilities to the client and to the tribunal using good judgment and reasonable efforts, with considerable benefit to the client.

For these reasons, plaintiff should have judgment in the amount of the unpaid fees and costs, $34,161.65, plus prejudgment interest from the date of filing until today.